**UNITED STATES of America ex rel. Stanley HALPRIN, Appellant,**

v.

**Warden J. J. PARKER.**

**No. 17884.**

United States Court of Appeals Third Circuit.

Argued Oct. 10, 1969.

Decided Oct. 28, 1969.

Stanley Halprin, appellant, pro se.

Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., for appellee (Bernard J. Brown, U. S. Atty., Scranton, Pa., on the brief).

Before McLAUGHLIN, FORMAN and ALDISERT, Circuit Judges.

OPINION OF THE COURT

FORMAN, Circuit Judge.

On July 12, 1967, Stanley Halprin, the appellant was granted a re-mandatory release from the United States Penitentiary at Lewisburg, Pennsylvania, conditioned, among other things, on his remaining within the limits of the Southern District of New York until September 5, 1969.[1]

On April 18, 1968, a warrant was issued by the United States Board of Parole (hereinafter called the Board) for his arrest for violation of his re-mandatory release. It was executed upon him

---

1. He was serving a 10 year sentence imposed by the United States District Court for the Southern District of New York on October 26, 1956 under a conviction for violating statutes involving illegal traffic in drugs and conspiracy to defraud the United States, 21 U.S.C. §§ 173, 174 and 18 U.S.C. § 371. Once before, on January 28, 1963, he had been granted a mandatory release but he was returned as a violator on December 10, 1965.

in the Clark County Jail, Las Vegas, Nevada on May 1, 1968, where appellant had been detained since April 17, 1968, booked by the local police in connection with a credit card fraud. On May 2, 1968, a federal probation officer afforded him a preliminary interview in the Clark County Jail during which time he was furnished with Parole Form 59a [2] but he refused to sign any of the preferences provided therein. However, appellant admitted leaving the Southern District of New York on April 14, 1968, without permission. Appellant was removed to the Federal Correctional Institution, Terminal Island, California, where, on May 22, 1968, he completed Parole Form I–16 in which he stated he did not wish to employ the services of an attorney, but did wish to have his wife appear as a voluntary witness in his behalf.

On June 25, 1968, appellant was afforded a hearing by a member of the Board at which time, again, he freely admitted that he had left the Southern District of New York without permission and had travelled across the country under an assumed name to avoid detection. He represented that he was an indigent and as such requested the Board to appoint counsel for him. He also requested that the hearing be continued until a later date to enable him "to complete arrangements for the obtaining of legal counsel * * * and to subpoena witnesses to testify" in his behalf. The

requests were denied and his re-mandatory release was revoked based on his admission that he had left the Southern District of New York without permission.

He was returned to the United States Penitentiary at Lewisburg, Pennsylvania, from where he filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania. Based thereon a rule was granted upon the respondent, Warden J. J. Parker, United States Penitentiary at Lewisburg, Pennsylvania, to show cause why a writ of habeas corpus should not be granted with permission to appellant to prosecute it in forma pauperis.

Without a hearing, but upon a careful examination of the entire record, including the transcript of the recorded hearing of the Board of June 25, 1968, the District Court in a memorandum held that the revocation of appellant's re-mandatory release of July 12, 1967, by the Board was sufficient in fact and law. On March 21, 1969, the District Court ordered the discharge of its rule to show cause and dismissed the appellant's petition for a writ. This appeal followed. It was argued by the appellant in person.

Appellant contends that the Board violated its own regulation [3] when it denied his requested continuance and that under such circumstances the District Court erred in sustaining the order re-

---

2. Parole Form 59a refers, among other things, to the Rules of the United States Board of Parole which provide that an alleged violator shall be afforded a preliminary interview followed by a revocation hearing and that he may be represented by an attorney of his choice and present voluntary witnesses in his behalf at his expense. The preliminary interview or local revocation hearing will be postponed upon request for a period up to 30 days in order that the prisoner may arrange for the presence of counsel or witnesses. The form provides the following alternatives for the alleged violator to choose: (1) a revocation hearing upon his return to a federal institution, (2) a postponement of the preliminary

interview, and (3) a local revocation hearing.

3. 28 CFR § 2.41 authorizes representation by counsel of prisoner's choice and the presentation of witnesses:
   "Each alleged parole or mandatory release violator shall be advised that he may be represented by counsel and that voluntary witnesses who have information relevant and material may testify at the preliminary interview or the revocation hearing, or both, authorized by § 2.40: *Provided*, that the alleged violator arranges for the appearance of counsel and witnesses in accordance with procedures prescribed by the Board."

voking his re-mandatory release. His complaint that he was denied time in which to arrange for counsel and witnesses fails when it is recalled that on May 22, 1968, he specified on Parole Form I–16 that he did not wish to employ an attorney. Any effort made by appellant to secure counsel for his Board hearing from the date of his federal arrest on April 18 to the time of his hearing on June 25, 1968, was without success, obviously for the reason of his conceded indigence. Furthermore, it was only during the course of the hearing on June 25, 1968, after his request for the Board's appointment of counsel was denied, that he proposed that the hearing be halted until he could engage in litigation to have the "courts" provide him with an attorney.

His assertion concerning the necessity for more time to produce witnesses in his behalf was equally specious. The only prospective witness he mentioned was his divorced wife, a resident in the locality of the hearing. No impediment to her appearance was suggested by appellant until the oral argument in this court when he stated that she was otherwise busy on that day. It is true that the Board's Form 59a,[4] the signing of which was rejected by appellant, informs that a preliminary interview or a local revocation hearing will be postponed for a period up to 30 days, but the Board was well within its province when it denied appellant's request made after the commencement of the hearing of June 25, 1968, under the futile circumstances upon which it was based.

On appellant's contention that, as an indigent, he was entitled to have the Board appoint counsel to represent him at his hearing, he urged that when the District Court based its validation of the Board's order upon the authority of Hyser v. Reed,[5] it overlooked the more recent decision in Earnest v. Willingham.[6] Unhappily for appellant, his reliance on Earnest v. Willingham was misplaced. That decision was clarified by the same court in the later case of Cotner v. United States.[7] There the court said:

"[I]n this case the appellant at all times has admitted that he violated parole when he left the district without permission. He sought a hearing in order to present evidence that would persuade the Board to overlook the violation. In these circumstances, the failure to provide appointed counsel does not constitute invidious discrimination and therefore is not violative of due process."[8]

Here, too, appellant, caught in Nevada, was patently in violation of his mandatory release commitment. That fact was no longer controvertible. He could only seek the Board's indulgence in excusing his action. For this, as in *Cotner*, and similar decisions[9] he was guaranteed no constitutional right to have counsel assigned to him.

Pending at the time of argument herein was a motion by appellee to dismiss the appeal as moot because on November 6, 1969, appellant will be freed of supervision and no longer subject to return as a mandatory release violator providing he abides by the conditions of

---

4. Form 59a recites in part:
   "A preliminary interview or a local revocation hearing will be postponed, upon request, for a period up to 30 days in order that the prisoner may arrange for counsel and/or witnesses to appear at the interview or hearing. A postponement beyond 30 days will not be granted except at the discretion of the Board."

5. 115 U.S.App.D.C. 254, 318 F.2d 225 (1963), cert. denied [Thompson v. United States Board of Parole; Jamison v. Chappell] 375 U.S. 957, 84 S.Ct. 446, 447, 11 L.Ed.2d 315, 316 (1963).

6. 406 F.2d 681 (10 Cir. 1969).

7. 409 F.2d 853 (10 Cir. 1969).

8. Id. at 856.

9. Gaskins v. Kennedy, 350 F.2d 311 (4 Cir. 1965); Jones v. Rivers, 338 F.2d 862 (4 Cir. 1964); Hyser v. Reed, 115 U.S.App. D.C. 254, 318 F.2d 225 (1963), cert. denied sub nom. Thompson v. United States Board of Parole, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315 (1963).

his release until then.[10] In view of the foregoing disposition of appellant's main contentions, appellee's motion to dismiss the appeal need not be resolved.

Vague challenges to the accuracy of the transcription of the hearing, among other issues, were attempted to be raised herein by appellant. They do not merit discussion.

The order of the United States District Court for the Middle District of Pennsylvania of March 21, 1969, dismissing the petition of Stanley Halprin for a writ of habeas corpus will be affirmed.

10. Appellant was actually enlarged on a third mandatory release on August 1, 1969.