James Kenneth **JULIAN**, Plaintiff-Appellant,

v.

**C. E. HARRIS**, Warden, United States Penitentiary, Leavenworth, Kansas, et al., Defendant-Appellee.

James Kenneth **JULIAN**, Plaintiff-Appellant,

v.

**UNITED STATES of America,** Defendant-Appellee.

Nos. 72–1638, 72–1639.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 22, 1973.

Decided July 31, 1973.

Certiorari Denied Dec. 3, 1973. See 94 S.Ct. 581.

Sheldon K. Ginsberg, Denver, Colo., for plaintiff-appellant.

Bruce E. Miller, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., on the brief), for defendants-appellees.

Before PICKETT, McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

The central issue concerns the propriety of Julian's revocation hearing, he at the time being a mandatory releasee from the United States Penitentiary in Leavenworth, Kansas, and charged with violating the terms and conditions of his release from a sentence imposed in a Texas federal court. It is Julian's contention that the aforesaid hearing was void and without effect since he was not afforded his Fifth and Sixth Amendment rights to the appointment of counsel to represent him at the revocation hearing, and for the further reason that shortly prior to the revocation hearing he had been declared by the United States District Court for the District of New Mexico to be mentally incompetent and unable to stand trial in that court and at the time of his revocation hearing had not been declared by that particular court to have been restored to reason and mentally competent to stand trial. Julian's habeas corpus proceeding seeking immediate release was dismissed by the trial court after a full evidentiary hearing. Julian now appeals and we affirm.

The operative facts, as we see them, are not in dispute and will be summarized as follows:

1. On December 6, 1963, Julian was received at the United States Penitentiary at Leavenworth, Kansas, to serve a four-year sentence on a Texas Dyer Act conviction;

2. On September 12, 1966, Julian was mandatorily released from a federal penal institution at Seagoville, Texas, with a balance of 414 days remaining on his original four-year sentence, the release order providing, among other things, that Julian should not leave the United States District for the Southern District of Texas without permission and that he should commit no crime;

3. On December 21, 1966, Julian was taken into custody by the United States Marshal in Reno, Nevada, and charged with a Dyer Act violation, and on February 8, 1967, was sentenced to a five-year term by the United States District Court for the District of Nevada for a violation of 18 U.S.C. § 2312;[1]

4. On January 12, 1967, a mandatory release violator's warrant was issued by the United States Board of Parole for the unserved portion of the judgment and commitment from the Texas court, which, as mentioned, was for a total of 414 days;

5. On June 5, 1970, Julian was mandatorily released from the sentence of the United States District Court for the District of Nevada and simultaneously therewith a mandatory release violator's

---

1. This conviction on appeal was reversed, Julian v. United States, 391 F.2d 279 (9th Cir. 1968). Upon retrial, Julian was again convicted and resentenced to five years.

warrant in connection with the Texas commitment was executed and Julian remained in custody in the United States Penitentiary at Leavenworth, Kansas, under that warrant;

6. On June 11, 1970, Julian escaped from the United States Penitentiary at Leavenworth, Kansas, and was later arrested on July 1, 1970, in New Mexico;

7. As an outgrowth of his arrest in New Mexico, Julian was charged with a Dyer Act violation in the United States District Court for the District of New Mexico, and in connection therewith that court found on August 28, 1970, that Julian because of mental incompetency was unable to then stand trial and was thereupon committed to the Medical Center for Federal Prisoners at Springfield, Missouri, for further examination;

8. On September 28, 1970, and also on October 16, 1970, Julian was found by the psychiatric staff at the Springfield, Missouri, institution to be mentally competent to stand trial;

9. On November 19, 1970, the revocation hearing which is here under attack was held at the Medical Center for Federal Prisoners at Springfield, Missouri, and by order dated December 4, 1970, Julian's mandatory release from his commitment for the Texas Dyer Act violation was revoked for having left Texas without permission and for having committed a crime, namely, the Dyer Act violation in Nevada; and

10. On December 18, 1970, the United States District Court for the District of New Mexico determined that Julian was mentally competent to stand trial, and on January 29, 1971, Julian, having been convicted of this particular offense, was sentenced to five years imprisonment to be served concurrently with the remainder of the sentences resulting from his earlier conviction in Texas and from his mandatory release violation.

■ Julian initially contends that the revocation hearing on November 19, 1970, was void because he was not afforded counsel. Under the circumstances of this particular case, this argument is unavailing. We have previously held that early release, be it mandatory or otherwise, and revocation hearings are matters of legislative grace not constitutionally mandated, and that accordingly there is no constitutional right to retained or appointed counsel at such revocation hearing. Earnest v. Willingham, 406 F.2d 681 (10th Cir. 1969). In that same case, we recognized, nonetheless, that where, as here, the administrative practice is to permit one charged with violating the terms of his mandatory release to be represented by retained counsel, one thus accused may not under the Fifth Amendment be constitutionally denied counsel simply because he is financially unable to retain counsel.

In Cotner v. United States, 409 F.2d 853 (10th Cir. 1969), we later held, however, that there was no constitutional duty to appoint counsel to represent an indigent accused of violating the terms of his mandatory release where "he did not contest the operative facts of his violation." And again, in Earnest v. Moseley, 426 F.2d 466 (10th Cir. 1970), when Earnest was before this court for a second time, we reaffirmed the rule of *Cotner* and again held that a mandatory releasee, even though indigent, was not constitutionally entitled to counsel "when the factual issues relating to whether or not he violated the conditions of his release were not contested."

■ In the instant case, counsel suggests that Julian did not admit the operative facts pertaining to his alleged violation of the conditions of his mandatory release, and that therefore he was entitled to legal representation. This is not our view of the record. On the contrary, that Julian did in fact violate the terms of his mandatory release by leaving Texas without permission and by thereafter committing a crime in the state of Nevada is not now in dispute, nor has it ever been in dispute. Julian himself admitted these violations in open court and the stipulations of counsel also

admitted them. In such circumstance, we deem the "operative facts" to have been in truth and in fact admitted, and accordingly there was no constitutional requirement that Julian be appointed counsel to represent him at his revocation hearing. *See also,* United States ex rel. Halprin v. Parker, 418 F.2d 313 (3d Cir. 1969).

■ Julian next contends that his revocation hearing was void and of no effect because he was, as of the date of his hearing, namely, November 19, 1970, mentally incompetent. In our view, the record does not support this contention. Prior to the revocation hearing, ·the hearing examiner made a finding that Julian was mentally competent. In this regard, 28 C.F.R. § 2.49 provides that where there be a "reasonable doubt" as to the mental competency of a person scheduled for a revocation proceeding, the examiner shall conduct a hearing and determine the mental competency of the person involved, taking into consideration the person's ability to understand the nature of the scheduled proceedings and to participate therein. As above indicated, the doctors at the Medical Center in Springfield, Missouri, had in fact found Julian to be mentally competent on September 28, 1970, and again on October 16, 1970, and in determining that Julian as of November 19, 1970, was mentally competent and able to understand and participate in the revocation proceedings, the hearing examiner had before him these reports of the examining physicians. Without belaboring this matter, then, the hearing examiner's finding of mental competency finds support in the record.

■ In this same regard, counsel next argues that the revocation hearing was void because the District Court of New Mexico did not make a formal determination that Julian was mentally competent to stand trial in that court till December 18, 1970, about one month subsequent to the date of the revocation hearing. In thus arguing, counsel relies primarily on Gunther v. United States, 94 U.S.App.D.C. 243, 215 F.2d 493 (1954). Such reliance we believe to be misplaced.

The holding in *Gunther* was that an accused who has been adjudged to be mentally incompetent to proceed to trial cannot thereafter be tried without a subsequent judicial determination of his competency to stand trial. It is to be noted that in *Gunther* the conviction was not reversed, but the case only remanded for a hearing into whether the accused was in fact competent to stand trial when he did, with the direction that if it be determined that the accused was mentally competent to stand trial, then the error was harmless and the conviction should stand. In the instant case such a hearing before the parole board has already been held and, as indicated, resulted in a determination that Julian was mentally competent.

We fail to see how either the result or reasoning of *Gunther* operates to Julian's benefit in the instant case. The revocation hearing here under attack was no part of the New Mexico proceeding. The medical authorities at the Medical Center in Springfield had examined Julian and had in fact twice found him mentally competent some four to six weeks prior to the revocation hearing. And then the hearing examiner, taking into consideration these medical reports as to Julian's condition, made, in accordance with 28 C.F.R. § 2.49, a finding of mental competency as of November 19, 1970. The fact that the District Court of New Mexico did not make its determination of mental competency till December 18, 1970, does not in our view render inoperative the revocation hearing held one month earlier. In short, under all these circumstances, we find no reversible error in this regard.

Before leaving this particular matter of the overall propriety of Julian's revocation hearing, brief mention should be made of the recent case of Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). That case concerns a state parole revocation hearing and in

connection therewith the Supreme Court held that though a parole revocation hearing is not, as such, a part of a criminal prosecution and accordingly does not invoke the full panoply of rights due a defendant in a criminal proceeding, nevertheless due process does require an orderly hearing, however informal, to give assurance that the finding of a parole violation is factually correct. We believe the instant revocation hearing meets that test.

Julian's final contention is that he should have been given credit on the sentence imposed in connection with his New Mexico Dyer Act conviction for the time he was in custody subsequent to his arrest in New Mexico and up to the date when sentence was imposed. In thus arguing, counsel relies on 18 U.S.C. § 3568, which provides that credit shall be given "for any days spent in custody in connection with the offense or acts for which sentence was imposed." The short answer to this contention is that Julian's detention from July 1, 1970, the date of his arrest in New Mexico after his escape from the federal penitentiary in Leavenworth, Kansas, till January 29, 1971, when he was sentenced in the District Court of New Mexico, stemmed from the revocation of his mandatory release under the sentence imposed in connection with his earlier commitment on the Dyer Act violation in Texas, the unexpired term of which began to run from the date of custody under the violator's warrant, Teague v. Looney, 268 F.2d 506 (10th Cir. 1959). *See also,* Noll v. Board of Parole for Government of District of Columbia, 89 U.S.App.D.C. 206, 191 F.2d 653 (1951), and Doherty v. United States, 280 F.2d 35 (9th Cir. 1960).

This entire argument overlooks the fact that as of June 5, 1970, Julian was confined in the federal penitentiary in Leavenworth, Kansas, as one who had violated the terms of his prior mandatory release, and he was in this status when some six days later he escaped from that institution. As of the time of his escape, Julian had time to serve on his Texas commitment which exceeded the time interval between his arrest in New Mexico and the date of his sentence on that particular Dyer Act charge. We find no error in this regard.

Judgment affirmed.