**Peter RAIA**

v.

**F. E. ARNOLD, Warden, United States Penitentiary, Lewisburg, Pennsylvania.**

**No. 75–25 Civ.**

United States District Court, M. D. Pennsylvania.

July 7, 1975.

Peter Raia, pro se.

S. John Cottone, U. S. Atty., Scranton, Pa., for respondent.

## MEMORANDUM AND ORDER

NEALON, District Judge.

This case presents the question of whether the United States Bureau of Prisons may classify a prisoner as a "Special Offender" or "Special Case" without first providing him with a hearing consistent with the due process requirements of the Fifth Amendment. Petitioner, an inmate at the United States Penitentiary at Lewisburg, Pennsylvania, contends that for reasons unknown, he has been designated a special offender by the Bureau of Prisons without prior notice or an opportunity to confront witnesses testifying against him or present evidence to rebut that given in support of the classification. He requests the Court to issue a writ of mandamus pursuant to 28 U.S.C. § 1361 compelling the government to remove the "Special Offender" designation from his record until the respondent holds a hearing which fully conforms to the basic elements of due process. The essence of

petitioner's complaint is that the consequences of a "Special Offender" classification are significant and constitute "grievous loss" entitling a prisoner who is to be so classified to basic due process protection.

According to Bureau of Prisons Policy Statement 7900.47 (April 30, 1974), the "Special Offender" classification was created to provide policy guidelines on a system to identify and tabulate information on certain special categories of offenders who require greater case management supervision than the usual case. Included within the group of inmates who require "special handling" is one who, based on information contained in "official investigative reports", including court records, preventive reports or other reliable sources, was involved in "sophisticated criminal activity of an organized nature, or was a close or frequent associate of individuals involved in criminal activity."

The government admits that petitioner's file has been labeled a "special case" under the policy statement noted above asserting that it was affixed by the Bureau of Prisons based upon information in the petitioner's file that he is a member of "organized crime." Apparently the information relied upon is that petitioner was allegedly involved in a well organized criminal ring that specialized in thefts of securities and extortion on an international scale. In addition, petitioner has allegedly made numerous threats against several of his co-defendants requiring him to be separated from them in the federal prison system.

The Policy Statement guidelines provide that under the direction of an assigned staff member, the initial determination that an inmate should be classified as a "Special Offender" is made by the institution staff based upon the contents of the inmate's file. Any initial recommendation for such classification, including the reasons relied upon and the sources of pertinent information, if practicable, is to be forwarded to the Central Office of the Bureau of Prisons for review. If approved, a notation to this effect is made to the inmate's records at the Central Office and stamped on the prisoner's file at the institution. No prior notice of the classification is given to the inmate and he is not informed of the evidence underlying the classification, nor is he given the opportunity to contest the information relied upon by submitting his own evidence.

The government has admitted that, as a result of being classified a "Special Offender", an inmate's access to certain prison programs is made more difficult and less likely. "Special Offenders may not be given social furlough, released to a halfway house, or transferred to another prison without approval of the Bureau's Washington office." (Respondent's answer P. 1) Moreover, "Special Offender's" application for parole is automatically reviewed *en banc* by the Board of Parole and, if the prisoner's "Special Offender" classification in the Board's opinion is justified, the government admits the inmate's opportunity for parole consideration is lessened and, in some cases, the classification may bar early parole completely.[1]

In support of the Bureau of Prison's procedures, the government has taken essentially the same position as it did recently in *Catalano v. United States*, 383 F.Supp. 346 (D.Conn.1974), a case rendering extensive treatment to the very question at issue here. The government contends that the effects of a decision to classify an inmate as a "Special Offender" do not inflict a "grievous loss" on an inmate within the "liberty or property" concept of the Fifth Amendment entitling him to due process protection. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). It describes the classification procedure as merely a "flagging" system identifying which inmates in the prison system require special attention or special handling. The

---

1. The effects of the classification are set forth in more detail on page 769 *infra*.

government argues that the classification simply insures that when a critical decision is about to be made concerning the inmate, his important background characteristics will not be overlooked. Moreover, the government argues that since prior to classification an inmate has no proprietary interests in the programs admittedly made more difficult for a "Special Offender" to participate in, such as social furloughs, halfway houses, work release programs, parole, etc., there should be no procedural hearing required before placing a flag on one of the factors that will enter into the decision. However, the government's argument appears to be an attempted resurrection of the "right-privilege" dichotomy in determining whether constitutional rights are due, a concept which has been repeatedly rejected by the Supreme Court. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

These arguments were rejected by the court in *Catalano supra* and upon the same reasoning applied there, are rejected here. The effects of "Special Offender" classification were described in *Catalano* as follows:

"Ordinarily, a request for a temporary leave or a transfer is considered and a decision rendered at the institutional level by the prisoner's caseworker and the prison's Advisory Committee. The inmate may personally propound his cause and the application is immediately relief is prompt. (sic) However, unlike a regular prisoner, a 'Special Offender's' request for a similar dispensation must proceed through an additional step for approval in the Bureau of Prisons. Inordinate delays are common. In addition, the inmate has no personal contact with the decision-maker and if his request is denied, the prisoner experiences anxiety, anger, bewilderment and, at times, despondency. As previously stated, institution staff approved the applications

for leave of the petitioners in the case at bar, but its decisions were overruled by the Bureau of Prisons solely on the ground that the petitioners were 'Special Offenders.'

"With respect to parole, there are several definite consequences of a 'Special Offender' classification: (1) all 'Special Offender' cases are automatically reviewed *en banc* by the Board of Parole in Washington; (2) the Board of Parole makes an independent survey of the underlying evidence relied on by the Bureau of Prisons in designating an inmate a 'Special Offender' and, if the evidence is found wanting, the Board of Parole will not give any weight to the classification in its deliberations on the feasibility of parole for the prisoner; (3) however, if a prisoner's 'Special Offender' label has a supportable basis in fact, his parole release may well be affected even to the point of exceeding the appropriate length of time prescribed by the Table of Guidelines, 28 C.F.R. § 2.20, 39 Fed.Reg. 20031 (June 5, 1974).

"Thus, it is apparent to the Court that dire consequences flow from a 'Special Offender' classification and that an inmate has a vital interest in the decision-making process."

383 F.Supp. 350.

Despite the government's assertions to the contrary, the "Special Offender" classification procedures unquestionably serve a broader purpose and have a greater impact on an inmate than merely serving as a flagging device. The consequences of such a label are real and significant. As the Supreme Court has recently stated, where "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' [he is entitled] to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

■ Thus, the court concludes that the consequences of a "Special Offender" classification are indeed significant, subjecting the inmate to suffer "grievous loss" for which he would be entitled to prior procedural due process protections. *See Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969); *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951).

■ The court also agrees with the *Catalano* decision as to what process is due. In *Catalano*, after striking the balance that Due Process demands between the significance of the interest which the prisoner seeks to protect weighed against the governmental interest in the orderly administration of the prison system, *Wolff v. McDonnell*, 418 U.S. *supra*, the following requirements were set forth:

"Under these circumstances, it is the Court's opinion that fundamental fairness requires that the inmate be given at least ten days notice that a 'Special Offender' classification is contemplated. The notice should provide the prisoner with a specification of the reason or reasons for the designation and a brief description of the underlying evidence relied on by the prison authorities. This notice should be sufficient to enable the inmate, if he wishes, to marshall the facts in his defense and to controvert the charges at the hearing.

"The inmate must be afforded a personal appearance before the decision-maker and be permitted to call witnesses and present documentary evidence. The hearing officer, of course, will have the necessary discretion 'to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.' *Wolff v. McDonnell*, supra, 418 at 566, 94 S.Ct. at 2980.

"Except in the unusual situation where the decision-maker cannot rationally determine the facts, the opportunity for confrontation and cross-examination of those furnishing evidence against the inmate is not required. The testimony disclosed that, in the overwhelming majority of the 'Special Offender' cases, the source of the information against the prisoner contained in his presentence report or in other documentary materials. The inmate should be fully informed of the nature of the evidence against him and be afforded suitable time to present his side of the case.

"Counsel need not be furnished. However, if the issues are complex or the inmate appears to be unable to collect or present his evidence, he should be permitted the aid of retained counsel, counsel-substitute, or the members of . . . . .

"The hearing officer, who should not have personal knowledge of the information upon which the proposed 'Special Offender' classification is based, may be appointed by the warden or the officials of the Bureau of Prisons. An inmate's caseworker shall be eligible to preside as the decision-maker. The proceedings need not be transcribed or recorded. Within a reasonable time after the hearing is concluded, the hearing officer must submit written findings in support of an affirmative opinion that a 'Special Offender' classification is warranted under the facts of the case.

"Finally, a recommendation for a 'Special Offender' classification shall be subject to review by the Chief of Classification and Parole at the F.C.I., the warden, and ultimately the Bureau of Prisons."

383 F.Supp. 352, 353.

Thus, for the reasons stated above, the respondent will be ordered to remove all "Special Offender" classification notations from all of petitioner's records and files in the Bureau of Prisons and the "Special Offender" designation of petitioner is not to be used in any manner or form by the Bureau or the Board of

Parole until the respondent holds a hearing which fully conforms to the due process procedures set forth in this opinion.