Eugene SMALDONE, Petitioner,

v.

UNITED STATES of America et al., Respondents.

No. 77–3116.

United States District Court, D. Kansas.

Aug. 29, 1978.

**1002**

James R. Wyrsch, Kansas City, Mo., for petitioner.

## MEMORANDUM AND ORDER

THEIS, Chief Judge.

This civil action was initiated in the United States District Court for the Western District of Missouri. The Government filed a Response urging that the complaint be treated as a petition for writ of habeas corpus. Thereafter, the matter was transferred to this court for the reason that petitioner, Eugene Smaldone, Jr., is currently incarcerated within this judicial district.

Several different bases for jurisdiction are asserted. For the reasons stated in the first four pages of the Government's Response, we agree that the only appropriate basis for jurisdiction is the federal habeas corpus statute, 28 U.S.C. § 2241. *Accord, Geraghty v. United States Parole Commission*, 429 F.Supp. 737 (M.D.Pa.1977).

Smaldone is confined in the United States Penitentiary, Leavenworth, Kansas, by virtue of two concurrent terms, one of ten and the other of four years. The four-year sentence was imposed on October 27, 1972, for operating an illegal gambling business in violation of Colorado law and 18 U.S.C. §§ 1955 and 2. The ten-year term with three years special parole was imposed on January 1, 1973, for conspiracy to import narcotics (cocaine) in violation of 21 U.S.C. § 963.

Smaldone began serving his aggregated terms of ten years on January 5, 1973, and became eligible for parole consideration on May 2, 1976. On April 19, 1976, an initial parole hearing was held before a panel of examiners. On April 29, 1976, petitioner was notified that his case had been designated "original jurisdiction" and referred to the National Directors for decision. The reason given for the original jurisdiction classification was that the offense was part of a "large scale criminal conspiracy." On May 14, 1976, petitioner was notified of the National Directors' decision to continue the matter for an institutional review hearing in April, 1978. The reasons stated for denial of parole were:

Your offense behavior has been rated as very high severity because the offense involved conspiracy to import cocaine and conducting illegal gambling business. You have a salient factor score of 7. You have been in custody a total of 40 months. Guidelines established by the Board of adult cases which consider the above factors indicate a range of 36–45 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, it is found that a decision above the guidelines at this consideration appears warranted because you were involved in a large-scale and ongoing criminal enterprise.

Smaldone appealed this decision to the Commission as a whole as permitted under 28 C.F.R. § 2.27. He was notified on October 21, 1977, that the previous decision was modified to a *statutory* review hearing in April, 1978, to reflect that his continuance was limited by the new Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201 *et seq.*, (1978 Supp.). In all other respects the original determination was affirmed.

On November 1, 1976, the Commission was notified that a report it had received two weeks earlier from the Organized Crime Unit of the Department of Justice

for consideration in deciding petitioner's appeal had pertained to petitioner's father, Eugene Smaldone, Sr., rather than petitioner, although it did refer to "young Gene" as well. The Commission thereafter obtained a report on the younger Smaldone and reopened his case to reconsider his application in light of the error and the correct report. On February 22, 1977, the Commission notified Smaldone that no change would be made in the previous order dated October 21, 1976, which continued the matter until April, 1978.

Petitioner contends that actions of the Parole Commission have violated his constitutional rights. In support of this contention he asserts that (1) the administrative regulations governing parole are void; (2) that the denial of his application for parole was violative of due process standards; and (3) that the designation of his case as "original jurisdiction" was without due process.

■ First, we examine petitioner's attacks on the general validity of the Parole Commission's regulations. It is asserted that "the classification of petitioner under the Parole Commission regulations" violates due process because the regulations are vague. The administrative regulations governing parole decision-making are not penal statutes or rules capable of reaching expression sheltered by the First Amendment and, thus, are not susceptible to the same "void for vagueness" strictures. Rather, they are merely flexible "guideposts which assist the Parole Commission" in exercising its statutorily-endowed discretion. *Ruip v. U. S.*, 555 F.2d 1331, 1335 (6th Cir. 1977); 18 U.S.C. § 4206(c).

■ The test of whether an administrative regulation is void for vagueness is whether it " 'delineates its reach in words of common understanding.' " *Brennan v. Occupational Safety & Health Rev. Com'n*, 505 F.2d 869, 872 (10th Cir. 1974); *Cameron v. Johnson*, 390 U.S. 611, 616, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968). Administrative regulations are presumptively valid, and one who attacks them has the burden of showing their invalidity. *New York Foreign Frgt. F. & B. Ass'n v. Federal Maritime*

*Com'n*, 337 F.2d 289, 295 (2d Cir. 1964), *cert. denied sub nom., National Customers Brokers & Forwarders Ass'n of America, Inc. v. Federal Maritime Commission*, 380 U.S. 914, 85 S.Ct. 902, 13 L.Ed.2d 800 (1965).

■ Petitioner's mere conclusory allegations in this regard are not sufficient to sustain that burden. The court has, however, scrutinized the regulations governing parole decision-making published in Title 28 of the Code of Federal Regulations, Sections 2.1 through 2.29, and finds that they are not impermissibly vague under the *Brennan* test. Accordingly, the vagueness claim shall be dismissed.

■ Petitioner's second broad attack is that the regulations violate the separation of powers doctrine by allowing the Parole Commission to assume the judicial function of fixing punishment. We find this claim to be equally without merit since a decision to grant or deny parole does not modify or otherwise alter a prisoner's sentence. *Spoon v. Benson*, No. 77–3133 (D.Kan. Dec. 5, 1977); *United States ex rel. Marrero v. Warden*, 483 F.2d 656, 661, *rev'd on other grounds*, 417 U.S. 653, 94 S.ct. 2532, 41 L.Ed.2d 383 (1974); *Geraghty v. United States Parole Commission, supra; Garcia v. United States Board of Parole*, 409 F.Supp. 1230, 1239 (N.D.Ill.1976), *rev'd on other grounds*, 557 F.2d 100 (7th Cir. 1977). It is simply a determination as to whether the sentence imposed by the court shall be served within or without prison walls. *Foddrell v. Sigler*, 418 F.Supp. 324 (M.D.Pa. 1976).

Moreover, the general validity of the Commission's current regulations has been consistently upheld. *Rumfelt v. United States*, No. 76–57–C3 (D.Kan.1976), *aff'd*, No. 76–1708 (10th Cir.) (unpublished); *Garcia v. United States Board of Parole, supra; Wiley v. United States Board of Parole*, 380 F.Supp. 1194 (M.D.Pa.1974). For the foregoing reasons, we reject petitioner's broad challenges to the validity of the regulations governing parole.

◼ We proceed to examine petitioner's more specific claims. Petitioner contends that the Parole Commission's denial of his application for parole violated due process. He asserts three bases in support of this contention. First, he asserts that the Commission wrongfully considered factors other than the "offense for which he is serving his sentence." This claim is without legal basis. It is well-settled that the Commission is not restricted in its deliberations to consideration of the offense of conviction only. *Wyatt v. United States Parole Commission*, 571 F.2d 1089 (9th Cir. 1977); *Wayman v. Ciccone*, 541 F.2d 189 (8th Cir. 1976); *McArthur v. United States Board of Parole*, 434 F.Supp. 163 (S.D.Ind.1976), *aff'd* 559 F.2d 1226 (7th Cir. 1977); *Foddrell v. Sigler, supra; see also Spoon v. Benson, supra; Billiteri v. United States Board of Parole*, 541 F.2d 938 (2d Cir. 1976); *Bistram v. United States Board of Parole*, 535 F.2d 329 (5th Cir. 1976); *Manos v. United States Board of Parole*, 399 F.Supp. 1103 (M.D.Pa. 1975); *Lupo v. Norton*, 371 F.Supp. 156 (D.Conn.1974). On the contrary, the Commission is directed by statute to take into account a variety of relevant information, 18 U.S.C. § 4207.

The second asserted basis for petitioner's challenge to the denial of his parole application is that he is entitled to be released because he has served the time suggested by the Commission's guidelines.

◼ The guidelines do not provide an inflexible schedule of the time prisoners will be required to serve prior to being released on parole. As previously stated, they are merely guideposts which aid the Commission in exercising its discretion. The Parole Commission is given express authority to make decisions outside the guidelines in 18 U.S.C. § 4206(c). *Brown v. Lundgren*, 528 F.2d 1050, 1055 (5th Cir. 1976), *cert. denied* 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976); *Mayo v. Sigler*, 428 F.Supp. 1343 (N.D.Ga.1977). Thus, petitioner may not validly claim a right to be released on parole simply because he has been incarcerated for the time suggested in the guidelines.

Petitioner's third basis for challenging the decision to deny his parole application is that the "above the guidelines" decision was wrongfully based upon a finding that he was "involved in a large scale and ongoing criminal enterprise." He contends that this is an improper basis since it refers to his conviction for operating an illegal gambling business even though the mandatory release date has passed on his four-year sentence for that offense.

◼ The court is quite limited in its authority to review decisions rendered by the United States Parole Commission. In fact, the Commission's determinations to grant or deny parole are not judicially reviewable under the Administrative Procedure Act, but, rather, are committed wholly to agency discretion. 18 U.S.C. § 4218(d); *Wolfish v. Levi*, 573 F.2d 118 (2d Cir. 1978). Thus, the federal habeas corpus court has authority to review a denial of parole only when it appears "there has been an abuse of discretion on the part of the [United States Parole] Commission resulting in an abridgement of the petitioner's constitutional rights." *Baker v. Day*, 436 F.Supp. 593, 596 (W.D.Okla.1977); *Zannino v. Arnold*, 531 F.2d 687, 691 (3rd Cir. 1976).

◼ The decision to deny Smaldone's parole request on the challenged basis cannot be said to have resulted in the denial of any constitutional right. It is entirely proper to aggregate sentences for the purpose of determining parole eligibility. *Walker v. Taylor*, 338 F.2d 945 (10th Cir. 1964). The sentence from which petitioner seeks to be paroled is technically an aggregated ten-year term consisting of concurrent sentences for the gambling offense as well as conspiracy to import cocaine. Petitioner presents no authority for the proposition that the Commission may not consider the offense behavior underlying an allegedly expired concurrent sentence in determining his suitability for release on parole. Nor is such a view consistent with recent case holdings that the Commission may rely upon the prisoner's prior criminal history in denying parole. *Spoon v. Benson, supra; Shrum v. Levi*, No. 77–3031 (D.Kan. Sept. 8,

1977); *Jones v. Salisbury*, 422 F.2d 1326 (6th Cir. 1970), *cert. denied*, 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed.2d 69, *reh. denied*, 400 U.S. 931, 91 S.Ct. 190, 27 L.Ed.2d 192; *Barr v. United States*, 415 F.Supp. 990 (W.D.Okla. 1976); *Shahid v. Crawford*, 430 F.supp. 126 (M.D.Ala.N.D.1977).

 Far from finding that the actions of the Commission violated petitioner's constitutional rights, we conclude that such rights were more than adequately protected. Petitioner was represented by retained counsel at his initial parole hearing. He was provided with a satisfactory statement of reasons for the decision to deny his application. *Mower v. Britton*, 504 F.2d 396 (10th Cir. 1974). There is no indication in the record that his arguments on administrative appeal were not fully considered. Counsel was permitted to and did submit written material in support of petitioner's appeal to the Parole Commission as provided in 28 C.F.R. § 2.27. Accordingly, we find that no basis has been presented which would authorize this court to interfere with the Commission's denial of Smaldone's application for release on parole. *See, Earnest v. Moseley*, 426 F.2d 466 (10th Cir. 1970).

The remainder of petitioner's specific challenges are directed to the designation of his parole application as an "original jurisdiction" case. His main contention is that the Commission's procedure violated due process principles in that he was not provided with written notice or a hearing prior to the "original jurisdiction" designation. The determination of this claim requires some comprehension of the Commission's "original jurisdiction" process.

This process is set forth in Section 2.17 of Title 28 of the Code of Federal Regulations (1977). The policy of the United States Parole Commission pursuant to Section 2.17 is described for the court in the affidavit of Donald E. Phillips, the Administrative Hearing Examiner for the Commission, North Central Region. *See also, Rothman v. Director, United States Board of Parole*, 403 F.Supp. 188, 190 (N.D.Ga.1975).

Under this regulation, a Regional Commissioner may designate certain parole applications as original jurisdiction cases. At the time of petitioner's parole hearing, the criteria used in designating cases as original jurisdiction were:

(b)(1) Prisoners who have committed serious crimes against the security of the Nation, e. g., espionage, or aggravated subversive activity.

(2) Prisoners whose offense behavior

(A) involved an unusual degree of sophistication or planning or

(B) was a part of a large scale criminal conspiracy or a continuing criminal enterprise.

(3) Prisoners who have received national or unusual attention because of the nature of the crime, arrest, trial or prisoner status, or because of the community status of the offender or his victim.

(4) Long-term sentences. Prisoners sentenced to a maximum term of forty-five years (or more) or prisoners serving life sentences.

28 C.F.R. § 2.17 (1975, 1976, 1977). The Regional Commissioner refers such a case with his vote and comments to the National Commissioners for decision. The principal consequence of the referral is that the initial decision in the case is made by the National Commissioners, whereas in the normal case, the authority to make the initial decision is delegated to the hearing examiners, *Mayo v. Sigler, supra.* An additional consequence of the referral is that the inmate is provided with an appeal to the entire Parole Commission, at which time his representative may appear and speak upon the acceptance of a written request to do so. 28 C.F.R. § 2.27(a)(b).

 Affiant Phillips states that "the purpose of the original jurisdiction process is not to make parole more difficult to obtain but to protect confidence in the integrity of the Parole Commission by assuring that there is a broader consensus among the Commission members on cases where there is likely to be public or private pressure or sentiment to parole or not to parole.

*Accord,* 40 Fed.Reg. 5357 (February 5, 1975). He further avers that, "Designation of a case as original jurisdiction does not reflect a judgment by the Commission as to the merits of an inmate's application for parole. *Accord, King v. Warden, United States Penitentiary,* 551 F.2d 996, 999 (5th Cir. 1977). Thus, it appears that the classification as original jurisdiction does not affect the substance of the parole decision but merely affects the procedure by which the decision is made.

Petitioner's case was designated original jurisdiction in accordance with these procedures. He was orally informed at his initial parole hearing that the designation would be recommended. He also received written notification of the designation in the Notice of Action dated April 29, 1976. He had opportunities to challenge the designation in his appeal to the entire Commission on June 11, 1976, and upon the subsequent reopening of his case under 28 C.F.R. § 2.28.

Petitioner asserts that this procedure denied him due process because he was not provided with advance written notice of the designation or a prior hearing.

The question to be decided is whether or not petitioner was afforded sufficient due process in conjunction with the designation of his case as an original jurisdiction case.

At the outset of this discussion we note that both parties to this suit have cited authorities in support of their respective positions discussing the due process prerequisites to the classification of a prisoner as a "Special Offender," or as it is currently termed, a "Central Monitoring Case." The original jurisdiction designation is the voting procedure described herein which is utilized by the Parole Commission. The CMC classification is a distinct and apparently more pervasive mechanism employed by the Bureau of Prisons. It is imposed upon an inmate's entry into prison and is primarily an internal management tool designed to control the transfer, and, to some extent, the correctional programs of certain inmates, *Rothman, supra; Catalano v. United States,* 383 F.Supp. 346 (D.Conn.1974). The criteria for determining which inmates shall

be classified as Central Monitoring Cases is set forth in *Bureau of Prisons Policy Statement,* No. 7900.53 (April 7, 1976) and is similar in some respects to the original jurisdiction criteria. Thus, an inmate may be subject to a CMC classification and for the same reason be designated as an original jurisdiction case. However, the designations are made independently with the possibility of the assignment of one without the other, *Persico v. United States Dept. of Justice,* 426 F.Supp. 1013 (E.D.Ill.1977). We find no indication in the record that petitioner was classified as a Central Monitoring Case. The action that is challenged is that of the United States Parole Commission in designating petitioner an original jurisdiction case.

Because we find these classification procedures to be distinct, we express no opinion as to what process is due a prisoner who is classified a Central Monitoring Case. However, we have considered petitioner's cited authorities and others which have held that the CMC classification implicates due process. *Holmes v. United States Board of Parole,* 541 F.2d 1243 (7th Cir. 1976); *Cardaropoli v. Norton,* 523 F.2d 990 (2d Cir. 1975); *Polizzi v. Sigler,* 564 F.2d 792 (8th Cir. 1977); *Catalano v. United States, supra; Raia v. Arnold,* 405 F.Supp. 766 (M.D. Pa.1975); *Stassi v. Hogan,* 395 F.Supp. 141 (N.D.Ga.1975), *overruled, Mayo v. Sigler,* 428 F.Supp. at 1350 (1977). We do not believe these citations are persuasive authority with respect to the designation of petitioner's case as original jurisdiction.

Moreover, as the Government points out in its supplemental response, the Seventh Circuit Court of Appeals, in *Solomon v. Benson,* 563 F.2d 339 (1977), has ruled that in light of *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the decision in *Holmes, supra,* must be overruled and that procedural due process is not applicable to classification of a federal prisoner as a Central Monitoring Case. The Seventh Circuit further opined that *Moody* undercuts the Second Circuit's opinion in *Cardaropoli v. Norton, supra,* as well. Therefore, the cogency is called into ques-

tion of *Polizzi v. Sigler, supra,* and other cases which relied upon *Holmes* and *Cardaropoli* in holding that the CMC classification implicates due process. *See also, Mayo v. Sigler, supra.* Accordingly, we conclude that petitioner's cited authorities do not compel us to hold that due process must be provided a prisoner preceding the designation of his case as original jurisdiction.

We hold that the original jurisdiction designation does not implicate due process for the reasons that (1) it is not a grievous loss and (2) there is no right to be free from such a designation.

The original jurisdiction designation does not result in a grievous loss. This court recently held in *Spoon v. Benson, supra,* that "the denial of parole is not a grievous loss and therefore . . . the 'modicum' of process due in parole release proceedings chiefly requires that the Parole Commission furnish a statement of reasons sufficient to enable a reviewing body to determine whether parole has been denied for impermissible reasons or for no reason at all." *Accord, Brown v. Lundgren, supra; United States ex rel. Richerson v. Wolff,* 525 F.2d 797 (7th Cir. 1975), *cert. denied* 425 U.S. 914, 96 S.Ct. 1511, 47 L.Ed.2d 764 (1976); *see also, Childs v. United States Board of Parole,* 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974); *United States ex rel. Johnson v. Chairman of New York State Board of Parole,* 500 F.2d 925 (2d Cir. 1974), *vacated as moot,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289; *Wiley v. United States Board of Parole, supra.* Thus, it can hardly be said that a mere change in voting procedure employed within the parole decision-making process constitutes a grievous loss.

Moreover, there has been no showing that petitioner has been denied any privileges or rights as a result of his original jurisdiction designation. No evidence has been offered to support a finding that petitioner was denied rights that are afforded inmates in a regular parole hearing. Nor has petitioner made any attempt to show that inmates whose cases are designated as original jurisdiction are less likely to be granted parole than inmates not so designated.

There is no statutory or constitutional entitlement sufficient to invoke due process appertaining to an original jurisdiction designation. In *Moody v. Daggett, supra,* the United States Supreme Court stated:

> We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right.

The Court cited as an example, *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), in which it had held that no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a "grievous loss" upon the inmate. The basis for this holding was that state law conferred no right upon the prisoner to remain in the prison to which he was initially assigned. The Court went on to make it clear that the *Meachum* rationale applies to federal prisoners as well:

> The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process. 429 U.S. at 88, 97 S.Ct. at 279.

*See also, Marchesani v. McCune,* 531 F.2d 459, 461 (10th Cir. 1976), *cert. denied* 429 U.S. 846, 97 S.Ct. 127, 50 L.Ed.2d 117.

Petitioner has no right to release on parole. *Spoon v. Benson, supra; Earnest v. Willingham,* 406 F.2d 681 (10th Cir. 1969); *Julian v. Harris,* 482 F.2d 405 (10th Cir. 1973), *cert. denied,* 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 476. *A fortiori,* he has no right to be free from designation as an original jurisdiction case. Therefore, petitioner's designation as such does not warrant due process protections, and his claim to the contrary shall be dismissed.

We remark in passing that even had this court agreed with the holding in *Rothman v. Director, United States Board of Parole, supra,* that the original jurisdiction designation implicates due process, the procedures

employed by the Commission in this case met the standards set forth therein. Furthermore, the record indicates that the Commission's actions comported with the relevant regulations and statutes.

Petitioner next contends that the Parole Commission denied him access to the facts or evidence relied upon by the Commissioners in finding that his offense behavior was part of a large scale criminal conspiracy. Presumably, he is implying that this denial prevented him from fully challenging the facts on which the Commission relied.

 This contention provides no basis for relief from the decision denying parole or the original jurisdiction designation. Notices of Action informed petitioner that his offense was classified original jurisdiction because it involved a "large scale criminal conspiracy" and that a parole decision above the guidelines was warranted because he was involved in a "large-scale and ongoing criminal enterprise." These statements were sufficient notice for the Commission's actions. While the Commission's present policy is to provide an inmate with statements of reasons, he is not constitutionally entitled to a detailed written statement of the information relied upon by the Commission. *See* 5 U.S.C. § 555(e); *Mower v. Britton, supra; King v. United States*, 492 F.2d 1337 (7th Cir. 1974).

 Moreover, in light of petitioner's conviction under 18 U.S.C. § 1955 and the Tenth Circuit's affirmance of his conviction, it is hard to imagine how petitioner could effectively challenge the facts on which the Commission relied. On appeal, the Tenth Circuit recounted the Government's evidence that "Young Gene Smaldone" was one of two central bookmakers for a "widespread bookmaking operation involving a number of people in the Denver, Colorado area (which) was in operation between October 16, 1970 and January 31, 1972." *United States v. Smaldone*, 485 F.2d 1333, 1338 (1973), *cert. denied* 416 U.S. 951, 94 S.Ct. 1960, 40 L.Ed.2d 301. In addition, in urging a change of venue for trial, "Young Gene" and his father claimed "that the name Smaldone is so closely associated with crime

and violence in the Colorado area that any possibility of a fair trial was nonexistent," *United States v. Smaldone*, 485 F.2d at 1345; *see also United States v. Smaldone*, 484 F.2d 311, 319, n. 5 (10th Cir. 1973), *cert. denied* 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469. Thus, the error, if any, in denying petitioner access to specific information was harmless. *Accord: Geraghty v. United States Parole Commission, supra.*

Petitioner next claims that the application to him of the regulations covering original jurisdiction cases violated the prohibition against ex post facto laws. As support for this claim he alleges that the Commission's regulations had been declared void prior to his sentencing and were not in effect.

 Ex post facto law is penal legislation which imposes criminal punishment for conduct lawful previous to its enactment or inflicts greater criminal punishment than the law annexed to the crime when committed. *Calder v. Bull*, 3 U.S. (Dall.) 385, 390 (1798); *Harisiades v. Shaughnessy*, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1952); *Padgett v. Stein*, 406 F.Supp. 287 (D.Pa.1975). The ex post facto clause does not require parole regulations to be frozen at the time of sentencing, *Richards v. Crawford*, 437 F.Supp. 453 (D.Conn. 1977). Further, as was stated in *Shepard v. Taylor*, 556 F.2d 648 (2d Cir. 1977), the current Parole Commission's administrative guidelines do not constitute impermissible ex post facto laws when applied to adult offenders, since, in such instance, they merely clarify the exercise of administrative discretion without altering any existing considerations for parole release.

In summary, the Court finds that:

(1) The Parole Commission's regulations are not impermissibly vague. Nor do they violate the separation of powers doctrine.

(2) The denial of petitioner's application for parole on the basis of his involvement in a large-scale criminal conspiracy was not improper.

(3) The petitioner was not entitled to procedural due process prior to the designation of his case as original jurisdiction.

IT IS THEREFORE ORDERED that this action be dismissed and all relief denied.