Joseph STASSI, Sr.

v.

Marvin R. HOGAN, Warden Atlanta Federal Penitentiary, et al.

Civ. A. No. C75–906A.

United States District Court,
N. D. Georgia,
Atlanta Division.

June 10, 1975.

Edward T. M. Garland, Cliffe Lane Gort and John A. Nuckolls, Atlanta, Ga., for petitioner.

John W. Stokes, Jr., U. S. Atty., J. Robert Cooper, Asst. U. S. Atty., Atlanta, Ga., for respondents.

## ORDER

EDENFIELD, Chief Judge.

Petitioner, a federal prisoner incarcerated in the Atlanta Federal Penitentiary pursuant to an eighteen-year sentence imposed in June 1968 on a conviction for violation of 21 U.S.C. § 174, has filed a petition for the writ of habeas corpus. 28 U.S.C. § 2241. Petitioner alleges that his confinement is illegal for the reason that the United States Board of Parole, with the assistance of prison officials, violated his constitutional rights in the course of denying his application for parole release.[1]

Petitioner alleges that respondents have violated his constitutional rights in three separate respects:

(1) It is alleged that petitioner was "arbitrarily classified as a 'Special Of-fender' by the Board without any prior notice or opportunity to be heard or refute such a designation and that such classification continues and taints any future action by the Board." Petitioner contends that his parole application was denied partially because of his classification as a "Special Offender."

It has been recognized that the treatment inherent in the Special Offender process constitutes "grievous loss" within the meaning of Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed 484, (1972), and its precedent cases. In a well-reasoned opinion by Judge Zampano of the United States District Court for the District of Connecticut, Catalano v. United States, 383 F.Supp. 346, 352 (D.Conn.1974), it was held that, although the Special Offender classification "may facilitate prison administration, this does not excuse the lack of due process inherent in the present practices by which an inmate is accorded the special designation." See also Masiello v. Norton, 364 F.Supp. 1133 (D.Conn.1973). This court agrees and therefore holds that since there appears to be a profound and adverse change in a prisoner's status, both with regard to the conditions of his confinement and with regard to his chances for parole, as a result of his being designated a "Special Offender," a prisoner is entitled to the basic elements of rudimentary due process before he may be so designated.

What constitutes rudimentary due process, of course, is not a fixed set of procedures, since the very nature of due process "negates any concept of inflexible procedures universally applicable to every imaginable situation." Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230, (1961). Furthermore, since the issue arises here within the penal system,

---

1. A previous petition for habeas corpus filed by this petitioner, Civil Action No. C75–679A, was voluntarily dismissed in order that petitioner might proceed to exhaust his administrative remedies. Petitioner now having unsuccessfully appealed his denial of parole to the National Appellate Board, he alleges that he has fully exhausted administrative remedies.

there must be a careful balancing of the interests of that system as against the interests of the prisoner. *See* Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). With the need for such a balancing in mind, the court would note that, although prison officials may have valid interests in the use of the "Special Offender" classification, its imposition upon a prisoner does not present prison officials with the kind of disciplinary emergency which requires rapid decision and action. Furthermore, by its very definition, Special Offender status is conferred only upon "certain special categories of offenders who require greater case management supervision than the usual case." Bureau of Prisons Policy Statement 7900.47 (April 30, 1974). Consequently, compliance with the basic elements of formal due process should not impose upon prison officials any undue administrative burden.

■ Accordingly, the court concludes that fundamental fairness requires that a prisoner whom the Bureau of Prisons wishes to designate as a "Special Offender" is entitled to at least ten days' notice of that fact. Such notice should specifically inform the prisoner of the reasons for which such designation is contemplated and include a brief description of the evidence relied upon in support thereof. This notice should be aimed at providing sufficient information to "enable the inmate, if he wishes, to marshal the facts in his defense and to controvert the charges at the hearing." Catalano v. United States, 383 F. Supp. at 352–53.

The hearing required by due process is intended to afford the prisoner a suitable opportunity to present his side of the case. He should be permitted to appear personally to present documentary evidence, and to call witnesses in his behalf, within reasonable limits. *See* Wolff v. McDonnell, 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Since, in the usual case, the source of the information against a prisoner should be contained in his presentence report or similar documentary evidence, it should not be necessary for the prisoner to cross-examine those furnishing the evidence against him. In the unusual case, however, where the hearing officer is unable to rationally determine the facts, confrontation and cross-examination may be appropriate. Similarly, in the usual case, counsel need not be furnished, but neither should assistance of counsel be prohibited if the prisoner desires it and obtains it.

The hearing officer should be a true finder of fact, appointed by prison officials, but not having any prior knowledge of the evidence upon which the proposed Special Offender classification is based. No verbatim record of the proceedings need be kept, but if the hearing officer decides that the special classification is warranted, he must submit written findings in support thereof within a reasonable time after the conclusion of the hearing. Such a decision should be subject to review by Warden Hogan and, thereafter, in conformity with the administrative remedies outlined in Atlanta Policy Statement A–2001–6 CH 2 (January 1, 1975).

Accordingly, respondents are hereby allowed fifteen (15) days within which to show cause (1) why they should not be ordered to totally expunge the "Special Offender" classification from any records maintained by them with respect to petitioner, and (2) why they should not be enjoined from thereafter reclassifying petitioner as a "Special Offender" unless he is accorded procedural due process as outlined herein.

(2) Petitioner further alleges that the parole board failed to follow its own guidelines, 28 C.F.R. § 2.20, by classifying petitioner in the "greatest" severity of offense category, rather than in the "very high" category. Petitioner claims that he has had no prior conviction for the sale of "hard drugs" and, consequently, is entitled to classification in the latter, less severe, category. If petitioner's allegations are true, the parole

board's error in categorizing the severity level of his offense constitutes an abuse of discretion, 18 U.S.C. § 4203, *see* Billiteri v. United States Board of Parole, 385 F.Supp. 1217 (W.D.N.Y.1974), and petitioner is entitled to immediate consideration for parole ·in light of the proper classification of his offense severity.[2]

■■ This court has no desire or intention to act as a super parole board. It recognizes that the guidelines are only guidelines, and that even if petitioner is considered for parole within the proper offense category, the board may still exercise its largely unreviewable discretion to deny parole release. All this court requires is that the board not abuse its discretion by making decisions on the basis of misinformation of such magnitude as to be fundamentally unfair and to deny a parole applicant due process of law.[3] It is reiterated that this court will not engage in the regular business of examining the parole board's addition in calculating salient factor scores or reviewing any and all objections to severity categorizations of a prisoner's offense. This court specifically will not second-guess the parole board as to the severity of offense category in which to place an offense which is not listed in the guidelines. Where, however, the objection to the categorization rests, as it does here, upon an ultimately knowable fact which can be easily determined, the court will intervene to do substantial justice. Here, petitioner's challenge to classification in the "greatest" category may be adjudicated simply by determining whether he has had a prior conviction for the sale of hard drugs. If he has had no such prior conviction he is entitled to have his offense classified in the "very high" category. This court will, however, decline to intervene in other cases with more complex fact patterns which necessarily involve the parole board's discretion.

Accordingly, in the absence of respondents' showing cause within fifteen (15) days why petitioner should not be granted the writ of habeas corpus and released from confinement, or in the absence of the parole board setting a date for a hearing to be held within thirty days at which petitioner's application for parole release will be reconsidered in a manner consistent with this opinion, the writ will be granted.

(3) Finally, petitioner alleges that he has been denied due process by virtue of the parole board's failure to state "specific, cogent, and supportable reasons for a denial of parole," relying rather on "mere 'boiler plate' terminology". Petitioner was informed ·by the board:

> "After careful consideration of all relevant factors and information presented, it is found that a decision to release you at this time would depreciate the seriousness of the offense committed and thus is incompatible with the welfare of society, and that there is not a reasonable probability that you would live and remain at liberty without violating the law."

This language exactly tracks the language of the general reasons set out in 28 C.F.R. §§ 2.13(b)(1) and (2); yet the same regulation also provides that the board should give "further specification" of the reasons "when appropriate." This court is of the opinion that it is the rare case in which the mere giving of the kind of reasons stated by the board in this case, without any elaboration or further specification, is sufficient to impart any useful information

---

2. Petitioner alleges that the parole guidelines suggest that a prisoner who has a salient factor in the nine-to-eleven range and whose offense is rated in the "very high" category should serve twenty-six to thirty-six months. Petitioner further alleges that he has already been incarcerated for this offense for more than ninety-four months. The parole guidelines do not suggest any period of incarceration for prisoners whose offense falls in the "greatest" severity of offense category.

3. Petitioner alleges that the board admits its classification error, "yet has taken no action to correct the results of the oversight."

to the prisoner. Use of mere *pro forma* language such as that employed here makes a mockery of the requirement that a prisoner be given reasons for the denial decision. *See* King v. United States, 492 F.2d 1337 (7th Cir. 1974). Such language was rejected as insufficient in Billiteri v. United States Board of Parole, supra, in which the district court heeded the ruling of the Second Circuit that the statement of reasons required in a case of parole denial must be such as "will permit the reviewing court to determine whether the Board has adopted and followed criteria that are appropriate, rational and consistent, and also protects the inmate against arbitrary and capricious decisions or actions based upon impermissible considerations." United States ex rel. Johnson v. Chairman, 500 F.2d 925, 929 (2d Cir. 1974), vacated as moot, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974). *See also* Wren v. United States Board of Parole, 389 F.Supp. 938, 942, n.2. (N.D.Ga. 1975). Such language as that used here was also found insufficient in Candarini v. Attorney General, 369 F.Supp. 1132, 1137 (E.D.N.Y.1974), where the court required that the board set out facts and reasons sufficient "to enable the inmate to know why he has been denied parole and what he can do to better regulate his future conduct." If the purported rehabilitative goals of the penal and parole systems are to be served, the prisoner must be informed of the reasons underlying the denial; consequently, the prisoner will be enabled to conform his institutional conduct to the standards expected by the board. *See* Mower v. Britton, 504 F.2d 396 (10th Cir. 1974). Use of boilerplate language which is not related in some specific way to an individual's case does not serve these ends; it gives the appearance of unfairness and arbitrariness, and if there is to be respect for the parole system, the *appearance* of fairness is second in importance only to fairness in fact. This court has no intention of engaging in the business of reviewing the adequacy of reasons given by the parole board for denials of parole. However, since it has been determined that prisoners are entitled to reasons, this court is not disposed to allow absolutely anything the parole board chooses to call a "reason" to satisfy the requirement. To do otherwise would be to afford prisoners a right but no remedy with which to enforce it. The court is not requiring an elaborate detailed analysis of the reasoning underlying denial of parole in an individual case, but it does feel that justice requires that the reasons given to a parole applicant relate with at least minimal specificity to the individual prisoner's situation. The reasons issued by the board in the instant case do not relate to petitioner's case with even that minimal specificity needed to render their issuance more than a meaningless formality.

■ Accordingly, this court finds the statement of reasons submitted by the board in this case to be insufficient to usefully inform the petitioner of the reasons for the denial of his parole application. The court has already ordered the board to show cause why the writ should not be granted, or in the alternative, to reconsider petitioner's application in a manner consistent with this opinion. Should the board choose the latter course and subsequently decide to deny parole release, the board is hereby ordered to give petitioner a brief statement of clear, specific, and meaningful reasons for that decision, which reasons are sufficiently related to his individual case as to enable a reasonable man to understand why such a decision was reached. 28 C.F.R. § 2.13(d).

Petitioner has also applied for bail to be set pending the disposition of this case. Petitioner has cited no authority in support of this application, and the court is aware of none. The application is denied.

In summary:

(1) Respondents are allowed fifteen (15) days within which to show cause why they should not be ordered to total-

ly expunge the "Special Offender" classification from petitioner's records, and why they should not be enjoined from thereafter reclassifying petitioner as a "Special Offender" without according him procedural due process as outlined in this opinion.

(2) Respondents are allowed fifteen (15) days within which to show cause why petitioner should not be granted the writ of habeas corpus or, in the alternative, to set a date for a hearing to be held within thirty (30) days at which petitioner will be reconsidered for parole release in a manner consistent with this opinion.

(3) Petitioner's application for bail pending disposition of the case is denied.

(4) The Clerk is directed to resubmit this case fifteen (15) days from today.