Norman **ROTHMAN**

v.

**DIRECTOR, UNITED STATES
BOARD OF PAROLE.**

**Civ. A. No. C 75–385 A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 20, 1975.

On Motion to Reconsider Sept. 26, 1975.

Norman Rothman, pro se.

Richard Horder, Asst. U. S. Atty., Atlanta, Ga., for defendant.

## ORDER

JAMES C. Hill, District Judge.

This habeas corpus case purports to raise the issue whether the Due Process Clause or the Equal Protection Clause requires that procedural rights be extended to federal prisoners prior to their classification as "Special Offender" by the Bureau of Prisons. The petitioner, Norman Rothman, is an inmate at the Atlanta Federal Penitentiary. He contends that as a result of his being classified a "Special Offender," his chances for parole have been adversely affected and that his classification as a "Special Offender" was made by the Bureau of Prisons without the rudimentary elements of due process.

On August 30, 1973, petitioner entered a guilty plea to two counts charging violation of Title 26, United States Code, Section 7206(1). He was sentenced to two years imprisonment on each count to run concurrently with each other. It was further ordered that eighteen months of the twenty-four month sentence imposed in this case would run concurrently with a five year sentence that had previously been imposed by the United States District Court for the Southern District of New York. The petitioner was denied parole in July, 1974. The petitioner alleges that his parole decision was prejudiced by his "Special Offender" classification which classification was given to him without any prior notice or opportunity to refute the evidence. The respondent denies that the classification has any substantive effect upon the parole decision, but that it merely "flags" the prisoner to indicate that special treatment may be in order.

The Bureau of Prisons' designation "Special Offender" is outlined in Bureau of Prisons Policy Statement 7900.47, dated April 30, 1974. The purpose of the system is to identify and tabulate information on certain categories of offenders who require greater case management supervision than the usual case. The system seeks to avoid situations which would result in undue adverse public reaction or would represent a threat to a particular inmate, the institution or the community. The system is designed to control the transfer and community activities of these special inmates.

As of the time of petitioner's classification as a "Special Offender," the categories so designated were:

1) Non-Federal Offenders; an inmate serving a non-federal commitment under a contract with a non-federal authority;

2) Offense and Prior Record; an inmate involved in "sophisticated criminal activity of an organized nature," or "a close or frequent associate" of individuals involved in organized criminal activity;

3) Protection Cases; an inmate whose life would be in danger if confined in the same facility with other offenders;

4) Extreme Custody Risks; an extremely dangerous inmate whose escape attempts or activities place the lives of others in danger;

5) Subversives; an inmate-member of an organization which advocates overthrow of the government or violation of the civil rights of others;

6) Cases of Notority; an inmate whose crime caused broad national publicity or whose release would probably generate undue adverse public reaction;

7) Threats Against High Governmental Officials; and

8) Others whom the Warden designates as requiring especially close supervision. If designated a Special Offender, the inmate may not be transferred or participate in community programs without the prior approval from the Central Office of the Bureau of Prisons in Washington, D. C.

The petitioner has been classified as a Special Offender by the Bureau of Prisons based on information contained in his file which, respondent alleges, indicates petitioner's involvement in organized criminal activity. As previously. noted, however, petitioner does not complain of the "Special Offender" classification because of the fact that it may in some ways restrict his transfer possibilities or his participation in community programs. The petitioner asserts that the classification has adversely affected his *parole possibilities*.

This contention respondent denies. Respondent asserts that the classification "Special Offender" is made by the Bureau of Prisons for their own internal reasons and that such has no adverse effect upon an inmate before the Board of Parole. To resolve this conflict an understanding of the inter-relationship between "Special Offender" and the parole process is necessary.

For parole purposes the petitioner is classified as an "original jurisdiction" case under 28 C.F.R. Section 2.17. At the time of petitioner's parole hearing, there were four criteria upon which that classification could be based:

1) National Security; an inmate who has committed serious crimes against the nation;

2) Organized crime; an inmate whom the Regional Director has reason to believe may have been professional criminals or played a significant role in organized criminal activity;[1]

3) National or Unusual Interest; an inmate who received national or unusual attention; and,

4) Long Term Sentences; an inmate serving 45 years or longer.

If the hearing examiners determine from their examination of the prisoner's file and their interview that the inmate should be given "original jurisdiction" treatment, they write up a report indicating that the case is a possible "original jurisdiction" case. They send this report to the Washington office, along with an alternative recommendation on the application for parole in the event the case is found not to be an "original jurisdiction" case. The Washington office investigates the basis for the proposed jurisdictional designation further and writes up a summary. The entire record is then sent to the Regional Director who makes the final determination whether the case is appropriate for "original jurisdiction." If so, then the inmate's entire record is reviewed by the *en banc* Board of Parole which consists of all the Regional Directors. If the Regional Director determines that the case is not appropriate for "original jurisdiction," the case is sent back to the panel of hearing examiners who render their decision on the case as in any ordinary parole determination. The stated design of this system is to provide a larger quorum of Parole Board members "to protect the public's confidence in the integrity of Parole Board members in cases where there is more likely to be public interest in the granting or denial of parole." 40 Fed.Reg. 5357 (February 5, 1975).

The petitioner's case was designated "original jurisdiction" pursuant to these procedures. The basis for the designa-

---

1. As of February 5, 1975, 28 C.F.R. § 2.-17(b) has been changed to delete "organized crime" as a basis for a designation of original jurisdiction. Federal Register, Volume 40, No. 25, page 5357. The Parole Board has adopted a new category for original jurisdiction based on circumstances of the offense behavior.

tion arises from information in petitioner's file which purportedly indicates that he "may have been a professional criminal." His presentence report disclosed that he was a "principal non-member associate" of a Florida based criminal organization. In addition, his previous conviction [2] in 1960 for violating the National Firearms Act allegedly supports this action. That offense is alleged to have involved a large scale gun-running operation. Also considered in designating his case "original jurisdiction" was his conviction for the interstate transportation of more than three million dollars worth of negotiable securities stolen from several New York Exchange member firms.

The crux of the petitioner's complaint is that the classification of "Special Offender" has been erroneously placed upon him. The petitioner contends, therefore, to have been prejudiced thereby and discriminated against with regard to his chances for parole. Petitioner asserts that as a result of erroneously having been classified a "Special Offender" without an opportunity to refute the basis for the same, he was also designated an "original jurisdiction" case for purposes of parole. This combination, petitioner asserts, resulted in violation of his rights to Due Process and Equal Protection under the Constitution of the United States.[3]

The respondent does not contest the fact that the petitioner is classified a "Special Offender" by the Bureau of Prisons without an opportunity to respond to the evidence in support of such a classification. Nor does the respondent contest the fact that the petitioner has been designated an "original juris-

diction" case by the Board of Parole. The respondent does, however, assert that the former classification has nothing to do with the latter. The respondent asserts that the fact that a prisoner is classified as a "Special Offender" by the Bureau of Prisons merely "flags" the case for the Parole Board. The Board of Parole then makes it own determination as to whether the case is appropriate for "original jurisdiction" under the criteria set out above. Furthermore, the respondent argues that classification as an "original jurisdiction" case does not affect the substance of the parole decision but only affects the manner or procedure by which the decision is made. Thus, the respondent alleges that the petitioner has suffered no prejudice by the classification.

■ From a review of the record in this case it seems clear that a distinction must be made between the classification of a prisoner as a "Special Offender" and the decision to treat a prisoner's case as appropriate for "original jurisdiction." The decision to classify a prisoner a "Special Offender" is made by the Bureau of Prisons upon entry of an inmate into the federal prison system. A "Special Offender" is restricted as to his participation in outside community programs, his right to furloughs and his possibilities for transfer to other penal institutions. All decisions in this regard must be referred to the Bureau of Prisons in Washington for ratification. The classification is primarily an internal management tool designed to control the transfer and, to a lesser extent, the correctional programs of certain inmates. From the record submitted by the petitioner it seems clear that

---

2. Pursuant to an order entered May 22, 1975, the United States District Court for the Western District of Pennsylvania vacated this conviction on petitioner's application for a writ of coram nobis. This was a result of a stipulation that petitioner's Sixth Amendment rights had been violated.

3. In stating that this is the "crux" of the petitioner's complaint, the Court must con-

cede that this is so only in view of the fact that the Court is required to read petitioner's complaint liberally. Actually, there is no evidence that petitioner even knew that there was such a thing as "original jurisdiction." This, of course, explains his misconception with regard to his "Special Offender" status as it relates to the parole process.

he is not contesting his classification as a "Special Offender" *per se.* The petitioner is contesting his designation as an "original jurisdiction" case by the Board of Parole. Therefore, *Stassi v. Hogan,* 395 F.Supp. 141 (N.D.Ga.1975) (Edenfield, J.) and *Catalano v. United States,* 383 F.Supp. 346 (D.Conn.1974) are not directly in point. In *Stassi* Judge Edenfield held that "a prisoner is entitled to the basic elements of rudimentary due process" before he may be designated a "Special Offender." In *Catalano,* Judge Zampano likewise held that an inmate was entitled to the basic elements of due process before being designated a "Special Offender." While each of these cases was decided in the parole context, neither opinion dealt directly with the issue here presented. That is, whether a prisoner is entitled to any due process protections prior to being classified an "original jurisdiction" case by the Board of Parole.

As has been noted, the material upon which the Board of Parole relies in order to determine whether a particular case should be classified an "original jurisdiction" case is strikingly similar to that relied upon by the Bureau of Prisons in classifying an inmate a "Special Offender."[4] In *Stassi* the parties evidently stipulated that an inmate classified a "Special Offender" automatically was designated an "original jurisdiction" case. However, in *Catalano* the Court found that the Board of Parole makes an independent survey of the underlying evidence relied on by the Bureau of Prisons and, if the evidence is found wanting, the Board of Parole will not give any weight to the classification *in its deliberations on the feasibility of parole.* Of course, this is not to say no weight is given with regard to the "original jurisdiction" determination as opposed to the parole decision itself.

In the case *sub judice* the Board of Parole by affidavit of a hearing examiner asserts that the purpose and criteria for the action by the Bureau of Prisons policy "has no bearing on the Board's consideration of a prisoner *for release on parole.*" Again it should be noted that this is different from saying that no consideration is given to the Bureau of Prison's designation of an inmate as a "Special Offender" *with regard to his classification as an "original jurisdiction" case.* It is with this classification that our attention must be directed.

■ It is now well established that the very nature of due process "negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). It is also true that courts have, and should, avoid unnecessary intervention in and interference with the administration of prisons and parole decisionmaking. Yet, this broad discretionary power does have limits and is subject to judicial review when a prisoner suffers a substantial loss due to arbitrary actions by these officials. *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

The resolution of the issue in this case depends upon the weight of the interest to be ascribed to the prisoner in not being classified an "original jurisdiction" case balanced against the interest of the Board of Parole in not being constrained by some form of due process procedures, *Wolff v. McDonnell, supra.* It is important to bear in mind that the classification itself is not under attack. No one contests the authority or propriety of the Board in establishing such a system of classification. The sole issue is the manner in which this system shall be operated.

The Board argues that the system does not operate to abridge any substantive rights of a prisoner but that it merely changes the voting quorum for the parole decision. Thus, the purpose

4. At least three of the four categories used by the Board of Parole are analogous to the categories used by the Bureau of Prisons.

of the increased voting quorum requirements for these cases is stated not to be to make parole more difficult but "to protect confidence in the integrity of the Parole Board by assuring that there is a broader based consensus among the Board on cases where there is more likely to be public or private pressure to parole or not to parole." This is certainly a legitimate interest worthy of consideration in viewing the value of the "original jurisdiction" system.

However, it is difficult to see exactly what weight this consideration has with regard to whether a prisoner is entitled to some basic elements of due process prior to invocation of the system. This Court is of the opinion that the *Stassi* and *Catalano* reasoning applies even more forcefully in the context of a determination that a particular case should be classified an "original jurisdiction" case than in the circumstances there presented. This seems so for two reasons. First, respondent's argument that the petitioner has no cognizable or legitimate interest in whether or not he is classified an "original jurisdiction" case must be rejected. By respondent's own admission the very purpose of the system is to increase the "voting quorum requirements" for these cases "to enable the Board to *more confidently deny parole to a prisoner who is a popular public figure* or to grant parole to a prisoner who appears to have been a professional criminal prior to his incarceration." (emphasis added). The common sense import of this statement seems to be that the purpose of the system is to alter the decision which otherwise might have been made but for the "original jurisdiction" system. The fact that this is done in order to enable the Board to "more confidently" do so seems of little consolation to the prisoner who remains incarcerated as a result of this procedure. Another interest which the prisoner has is the desire to have his parole decision made by persons with whom the prisoner has personal contact as opposed to a decision by persons who have only a cold record before them.

The second consideration which argues in favor of applying the rudiments of due process to the determination that a particular case should be "original jurisdiction" is the slight burden which such a requirement will place on the Board of Parole. In this regard the situation is quite different from the requirement that the Bureau of Prisons give some form of hearing before classifying a prisoner a "Special Offender." In the parole process the procedures already include a hearing at which the prisoner is present. That is, a panel of hearing examiners interview the parole applicant as a part of the normal parole decision-making process. The additional burden placed upon the system in requiring that rudimentary due process apply to the procedures whereby a prisoner is classified an "original jurisdiction" case will be almost negligible.

Another factor tending further to show the slight effect upon the parole process by this requirement is the small number of prisoners who seemingly are included in this category. While no figures have been presented to the Court in this case, the Court noted in *Catalano* that only 39 of the 800 inmates in that case were classified as "Special Offenders." It is logical to assume that even fewer inmates are designated "original jurisdiction" cases as the criteria for the latter category is less inclusive than that of the former. Also, assuming that the prison officials comply with the ruling in *Stassi*, once a hearing is held for the purpose of determining whether a prisoner is to be classified a "Special Offender," insofar as their criteria for such classification overlaps with the Parole Board's criteria for "original jurisdiction" cases, there would seem to be very little, if any, additional burden.

█ In a third supplemental response the Board has argued at length on the content of this "rudimentary due process" or the "basic elements of due proc-

ess." The Board of Parole presently reviews the material in an inmate's file, interviews the inmate, and then decides whether the case should be recommended for "original jurisdiction" consideration. The Court is of the opinion that all that is required of the Board, in addition, is that it give to an inmate whom they consider a possible "original jurisdiction" case prior notice of such fact, the reasons why the Board feels that his case may be so designated, what the designation means, and an opportunity for the prisoner to refute the evidence used by the Board in making its decision. As has been noted, this procedure will not produce an increase in the hearings which the Board will have to conduct. It does mean that an inmate will at least be aware of and hopefully understand the reasons why he is being treated differently than his fellow inmates.[5] While a legitimate goal in the parole system is to instill in the public more confidence in the process, this should not be done at the expense of the prisoners themselves, particularly where, as here, the cost of having the best of both is minimal. Here, notice and an opportunity to present his side of the story will provide to the prisoner adequate procedure to protect his interests. Assuming that a particular case is found by the local panel to warrant a recommendation for treatment as an "original jurisdiction" case, then the reasons for this decision should be given the prisoner in his notice of action.

For the above reasons, this Court concludes that a prisoner is entitled to at least ten (10) days notice prior to his parole hearing that his case may be appropriate for "original jurisdiction" sta-

tus. Such notice should also contain the underlying basis for such a decision and what such a designation means. At the interview the prisoner, if he desires, should be given the opportunity to refute the evidence. If a particular case is designated one appropriate for "original jurisdiction," the reason or reasons should be given to the prisoner. He will then have the opportunity to contest this recommendation through the administrative process. This will allow a reviewing court to more readily determine whether the Board has followed its own criteria, whether the criteria and the decisions thereunder are appropriate, rationale and consistent, or are based upon impermissible considerations. Of course, judicial review in this context would seem to be the same as that deemed appropriate on the merits of a parole decision. *See, Sexton v. Wise,* 494 F.2d 1176 (5th Cir. 1974).

Accordingly, it is hereby ordered that the Board of Parole provide the petitioner in this case with notice and reasons as to why his case has been classified an "original jurisdiction" case within twenty (20) days of the filing date of this order. Within a reasonable time thereafter the petitioner should be allowed the opportunity to refute the facts upon which such determination is made. The Court notes that the petitioner's case was again referred to the National Directors for "original jurisdiction" consideration on July 3, 1975.[6] Hopefully, the additional hearing ordered in this case can either be consolidated with the previous action should the Board continue to be persuaded that the case warrants "original jurisdiction" status, or should the Board decide the recommen-

---

5. Insofar as the prisoner now is only told that his case is being "Refer[ed] to National Directors for Original Jurisdiction Consideration," the action as viewed by the prisoner would seem to carry indicia of an arbitrary decision. This Court pretermits consideration of what, if any, effect the decision in *Mitchell v. Sigler,* 389 F.Supp. 1012 (N. D.Ga.1975) might have on the issue raised herein in light of the disposition of this case.

6. Subsequent to the final drafting of this order, petitioner Norman Rothman submitted some additional materials, including a letter and, also, a notice of action indicating that his case has been continued until expiration. This additional material is basically cumulative and does not alter the disposition of this case.

dation is not warranted, they can simply institute their alternative disposition of the case.

## ON MOTION TO RECONSIDER

The respondent, United States Board of Parole, has now moved the Court to reconsider its order of August 20, 1975. In addition, petitioner through counsel has requested this Court to conduct a hearing wherein respondent should be required to show cause why the petitioner should not be released from incarceration instanter.

In support of his motion for a show cause hearing, petitioner alleges that it is apparent that the delays in this case will eventually moot the questions before this Court as the petitioner will be discharged from prison by the time a final decision is made in this case. Thus, petitioner argues that "bureaucratic, administrative and litigation delays" will cause him to be released before this Court's relief will benefit him. Consequently, petitioner would have this Court order his immediate release.

On the basis of the foregoing it seems to the Court that petitioner misconstrues this Court's prior opinion. Therein, the Court concluded that petitioner was entitled to at least ten (10) days notice prior to his parole hearing that his case may be appropriate for "original jurisdiction" status; that such notice should also contain the underlying basis for such a decision and what such a designation means; that at the parole interview petitioner should be given the opportunity to refute the evidentiary basis for such a designation; that if his case was judged appropriate for "original jurisdiction" status, he should be given the reasons therefor; and finally, petitioner should be given the opportunity to contest this determination through the administrative appellate process. The Court also noted that in petitioner's case this decision would in all likelihood mandate a new parole hearing.

██ The Court did not in any way intimate that petitioner was entitled to be released. This Court is not in the business of deciding who should be released on parole. That is a decision which rests within the sound discretion of the parole board and the Court is loath to interfere with their decision absent an arbitrary abuse. There has been no showing of abuse in this case and the petitioner is not entitled to be released by order of this Court. Therefore, the motion for a show cause hearing is denied.

In support of their motion for reconsideration, respondent argues that the "original jurisdiction" system does not alter the parole decision itself, only the place where that decision is made. Rather, respondent submits that the "original jurisdiction" system is designed to insulate the parole board from just the sort of pressure which could alter the parole decision in some circumstances. This position was asserted and rejected in the Court's prior opinion. The basic argument is that the system allows the parole board to "more confidently" do what they would otherwise have done anyway. However, the respondent again notes that the system is designed to "insulate" the parole board from "pressure" which could alter the parole decision. The Court is of the opinion that implicit in such a statement is an admission that absent this system designed to "insulate" the parole board from "pressure" the parole decision might be altered. The Court, thus, adheres to its original opinion in this regard.

In its earlier opinion the Court was of the opinion that a prisoner also had an interest in having his parole decision made by persons with whom the prisoner has personal contact as opposed to a decision by persons who have only a cold record before them. Respondent argues, however, that under the present system the final parole decision in regular parole cases is made, not by the examiner panel who has personal contact with the prisoner, but by the Regional Director who only has a "cold record" before him.

Thus, the record is no "colder," respondent asserts, before the National Directors than it is before the Regional Director. Therefore, respondent concludes that this Court's prior order gives the prisoner no more personal contact with the Board of Parole than he had before.

This Court's prior order was not designed to give a prisoner more personal contact with the board of parole. It was, and is, designed to give to a prisoner the opportunity to present his case personally at the first opportunity. Thus, respondent's analogy to the regular parole case wherein the Regional Director makes the final parole decision is inapposite. The fact is that in that process a prisoner is confronted with an examiner panel who will make a recommendation to the Regional Director on the issue of parole. The prisoner presumably knows why he is before the panel and can plead his case. If the panel decision goes against him, then he can plead his case on appeal to the Regional Director.

However, under the present "original jurisdiction" system, the first opportunity a prisoner has to present evidence on the issue of his status is after the examiner panel makes its recommendation. And this opportunity is rather hollow as he doesn't know the basis of such a recommendation and probably not even what it means. Thus, this Court's prior order did not rely upon a prisoner's opportunity for personal contact with the final decisionmaker; rather, reliance was placed upon a prisoner's opportunity to personally present his side of the story and refute the evidence against him at the earliest possible point in time.

The Court does feel, however, that the respondent's final argument has merit. The respondent asserts that requiring the parole board to give a prisoner at least ten (10) days prior notice that his case may be appropriate for "original jurisdiction" classification and the reasons for such a possible designation will require, in essence, two reviews for each parole applicant. That is, one review will be on the record to determine if notice of possible "original jurisdiction" classification should be given and then the personal parole interview must be conducted with the applicant by the examiner panel to make the parole decision. Respondent submits that this would represent a substantial increase in the burden on the parole board as they would have to review the records in each and every case in order to determine if "original jurisdiction" classification is possible.

In light of this additional information the respondent's motion to reconsider is granted. This Court's prior order is hereby modified so as to require that a prisoner be given notice at his parole interview that his case may be appropriate for "original jurisdiction" status; that he be given the underlying basis for such possibility and what such a designation means; that at the interview he be given an opportunity, if he desires, to refute the evidence so relied upon, including ten (10) days subsequent to the interview in which to present documents on his behalf; that if a particular case is designated one appropriate for "original jurisdiction," the reason or reasons be given to the prisoner; and that he then be given the opportunity to contest this recommendation through the administrative appellate process.

Accordingly, it is hereby ordered that the parole board provide petitioner in this case with a parole interview in compliance with the foregoing within thirty (30) days of the filing date of this order.