Robert MAYO

v.

Maurice H. SIGLER, Chairman, United States Board of Parole, and Marvin Hogan, Warden, Atlanta Federal Penitentiary.

Civ. A. No. C76–174A.

United States District Court,
N. D. Georgia,
Atlanta Div.

March 30, 1977.

Robert Mayo, pro se; Monroe J. Feldman of Spruell, Feldman & White, Atlanta, Ga., for petitioner.

John W. Stokes, Jr., U.S. Atty., Sherman D. Johnson, Ass't. U.S. Atty., Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

Petitioner, a federal prisoner incarcerated at the Atlanta Federal Penitentiary, has brought this habeas corpus petition challenging the Bureau of Prisons' designation of him as a special offender and central monitoring case, and seeking a new parole hearing because such a designation allegedly influenced the Parole Commission's decision to deny him parole in August 1975. The court ordered the respondents to show cause why the requested relief should not be granted in June 1976, and after numerous delays, the parties are now ready to have the petition addressed on its merits. Although the court still finds the factual record incomplete, it believes that this is an appropriate time to clarify the legal issues surrounding the claim.

The petitioner is serving a nine-year sentence, imposed in 1972, for violation of the Controlled Substance Act. In August 1975 he received a parole hearing, after which the parole examiners recommended that the case be continued until August 1978 or, in the alternative, that the case be forwarded to the National Board for the exercise of their original jurisdiction over the case, *see* 28 C.F.R. § 2.17.[1] The Regional Commis-

---

1. Section 2.17 of 28 C.F.R. provides:

"(a) A Regional Commissioner may designate certain cases for decision by a quorum of Commissioners as described below, as original jurisdiction cases. In such instances, he shall forward the case with his vote, and any additional comments he may deem germane, to the National Commissioners for decision. Decisions shall be based upon the concurrence of three votes with the appropriate Regional Commissioner and each National Commissioner having one vote. Additional votes, if required, shall be cast by the other Regional Commissioners on a rotating basis as established by the Chairman of the Commission.

"(b) The following criteria will be used in designating cases as original jurisdiction cases:

(1) Prisoners who have committed serious crimes against the security of the Nation, e. g., espionage or aggravated subversive activity.

(2) Prisoners whose offense behavior (A) involved an unusual degree of sophistication

sioner rejected these recommendations and instead forwarded the case to the National Board for review pursuant to 28 C.F.R. § 2.24.[2] The National Commissioners decided to continue his case for a hearing in August 1977. The petitioner contends that he was denied parole as a matter of course because he had been designated a special offender by the Bureau of Prisons, and that the parole examiners designated him an original jurisdiction case without providing adequate reasons therefor.

Pursuant to the Bureau of Prisons former policy statement 7900.47 (April 30, 1974), the petitioner was designated a special offender.[3] In July 1975 the petitioner requested that he be removed from the list, and his request was denied by Atlanta penitentiary officials who informed him that he had been designated a special offender because of his involvement with organized crime. In October, however, the national office informed him that their records reflected no special offender designation. In January 1976, this court had been informed by the Bureau that the petitioner had, in fact, been designated a special offender because the Bureau determined that he should be incarcerated at a place separate from his codefendants. In February, the central office of the Bureau explained to the petitioner that he had originally been designated special offender for both of the above reasons, but that the organized crime designation had been removed. As far as the court can determine no explicit reason was given to the defendant as to why he was originally classified as a special offender, or why the organized crime basis for such a classification was removed, except for the following written statement made by his case manager in response to petitioner's request for an administrative remedy:

"Based on information contained in your Central File from investigative agencies, you have been placed on the Special Offenders' List because of your involvement in sophisticated criminal activities of an organized nature and association with individuals involved in organized criminal activities."

After this action was filed, the Bureau of Prisons replaced the special offender system with the central inmate monitoring system, Bureau of Prisons Policy No. 7900.53 (April 7, 1976). Under the new system, a prisoner may be classified as a central monitoring case if (1) he requires special protection while in custody, (2) he requires close supervision because of the nature of his offense, institutional record, notoriety, etc., and (3) he is serving state commitments under contract with the Bureau of Prisons. Like the special offender system, the central monitoring system was adopted to insure that prisoners falling into the above categories were not transferred to other institutions or allowed to participate in community programs without the approval of the Bureau's central office.

or planning or (B) was part of a large scale criminal conspiracy or a continuing criminal enterprise.

(3) Prisoners who have received national or unusual attention because of the nature of the crime, arrest, trial, or prisoner status, or because of the community status of the offender or the victim.

(4) Long-term sentences. Prisoners sentenced to a maximum term of forty-five years (or more) or prisoners serving life sentences."

2. Section 2.24 of 28 C.F.R. provides:

"(a) A Regional Commissioner may review the recommendation of any examiner panel and refer this recommendation, prior to written notification to the prisoner, with his recommendation and vote to the National Commissioners for consideration and any action deemed appropriate. Written notice of this referral action shall be mailed or transmitted to the prisoner within twenty-one days of the date of the hearing. The Regional Commissioner and each National Commissioner shall have one vote and decisions shall be based upon the concurrence of two votes. Action shall be taken by the National Commissioners within thirty days of the date of referral action by the Regional Commissioner, except in emergencies.

"(b) Notwithstanding the above, a Regional Commissioner may, on the motion of the Administrative Hearing Examiner, modify the recommendation of a hearing examiner panel that is outside the guidelines to bring such decision closer to or to the nearer limit of the appropriate guideline range."

3. The special offender system is set out in detail in Catalano v. United States, 383 F.Supp. 346 (D.Conn.1974), and need not be reviewed here.

The Bureau of Prisons has informed the court that the petitioner is now designated a central monitoring case for the reason that he should be separated from his codefendants. The petitioner asserts, however, that his codefendants are, in fact, incarcerated in the same facility with him.

In *Catalano v. United States*, 383 F.Supp. 346 (D.Conn.1974), the court found that the designation of a prisoner as special offender had a significant effect upon his ability to receive furloughs, to be transferred to community treatment centers, and to receive release on parole. The court therefore concluded that the Bureau of Prisons must provide a prisoner with notice of such designation, an opportunity for a hearing before an impartial examiner, a right to produce witnesses, a written reason for the examiner's decision, and a right to appeal to the central office of the Bureau. That holding was followed by this court in *Stassi v. Hogan*, 395 F.Supp. 141 (N.D.Ga.1975), and by the Second and Seventh Circuit Courts of Appeals, *Cardaropoli v. Norton*, 523 F.2d 990 (2d Cir. 1975); *Holmes v. United States Board of Parole*, 541 F.2d 1243 (7th Cir. 1976); *and see Raia v. Arnold*, 405 F.Supp. 766 (M.D.Pa.1975); *but see Marchesani v. McCune*, 531 F.2d 459 (10th Cir. 1976), *cert. den.* —— U.S. ——, 97 S.Ct. 127, 50 L.Ed.2d 117 (1977).

### A. *The Effect of the Special Offender Designation on Parole*

The procedural due process required in *Catalano* and *Stassi* was clearly ignored in this case. The respondents assert, however, that the deprivation alleged here—denial of parole—was not the result of the special offender designation, since such a designation "does not play a role in the parole decision," (Respondents' Answer No. 15 to Petitioner's First Interrogatories). The administrative hearing examiner for the Parole Commission's Southeast Region elaborated on this position in his affidavit:

"Although it is possible that in some instances the underlying information on which a prisoner is classified as a Special Offender may be relevant to the consideration of his case for parole, the fact that a case is so classified does not in itself adversely effect [*sic*] his opportunity to be released by the Commission. The foregoing affidavit and attached documents demonstrate that Mr. Mayo was not adversely effected [*sic*] by the Bureau's designation of his case as a Special Offender." ¶ 9, p. 2.

As explained in the above statement, there is no doubt that the Parole Commission, when considering a prisoner for parole, takes into consideration the same underlying facts which are relied on by the Bureau of Prisons in designating a person as a special offender or central monitoring case. Thus, since 1974, the Parole Commission has established a procedure whereby certain cases are designated for original jurisdiction of the National Commissioners based upon many of the same factors considered by the Bureau, *see* n. 1, *supra*. In particular, those involved in sophisticated crime or a large-scale criminal conspiracy may be designated original jurisdiction by the Regional Commissioner, *see* 28 C.F.R. § 2.17(b)(2). Some individuals who are designated special offenders would not, however, be considered for original jurisdiction, *e. g.*, those who should be separated from their codefendants or those who are state prisoners held by the Bureau under contract. The Regional Commissioner cannot, therefore, simply rely on the Bureau's designation in making his own decision concerning original jurisdiction. The Commissioner must also rely on the record before the Board, including the prisoner's prior record, his disciplinary record with the prison institution, and his pre-sentence report, *see* 18 U.S.C. § 4207. Moreover, since the parole hearing examiners and the Commissioners have primarily the same information before them as the Bureau had when making its designation, it is hard for this court to conclude that the Bureau's designation, in and of itself, would affect the hearing examiner's decision to designate a case for original jurisdiction, or to grant or deny parole. But even if the designation did have such an effect, the prisoner would have the opportunity at his parole hearing

to challenge the underlying facts on which the designation is made.

In *Catalano*, Judge Zampano concluded that there were "several definite consequences" on parole arising from the special offender designation. He then went on to explain that those so designated were automatically reviewed by the National Board, and that the Board might well delay a prisoner's release beyond the time specified in the Commission's guidelines if the facts supported the Bureau's designation. But whatever the situation may have been at the time *Catalano* was decided, Judge Zampano's description of the Commission's procedure is no longer applicable today. The Second Circuit noted in *Cardaropoli* that the Parole Commission now makes its own determination as to whether a prisoner's case should be referred for original jurisdiction, but concluded that the inmate "has little opportunity at this juncture to contest the accuracy of such evidence meaningfully," 523 F.2d at 994. Thus, the Second Circuit seems to have concluded that the granting of a due process hearing, at which a prisoner could contest the Bureau's designation, would insure that the Parole Commission would have reliable information on which to base *its* determination as to original jurisdiction and, ultimately, parole eligibility.

■■■ This court would accept such reasoning if it did not believe that the prisoner was guaranteed adequate due process safeguards at the parole hearing itself. But the procedures specified in the Parole Commission and Reorganization Act, Pub.L.No. 94–233, 90 Stat. 219, 18 U.S.C. § 4208, clearly give the prisoner ample opportunity to contest the underlying facts on which a special offender or original jurisdiction designation is made. That section gives the prisoner thirty days' notice of the hearing, an opportunity to review any documents used by the Commission in making its determination,[4] and a right to testify and be represented at the hearing. Moreover, former District Judge Hill has held in *Rothman v. United States Board of Parole*, 403 F.Supp. 188 (N.D.Ga.1975), a decision in which this court concurs, that the Parole Commission must give a prisoner notice prior to the hearing that his case may be designated as original jurisdiction and must give him an opportunity both to refute such a determination at the parole hearing and to submit additional documents within ten (10) days after the hearing. The prisoner must also be informed as to the reasons for such designation and be given a right to contest it through appeal, 403 F.Supp. at 196. Clearly, these procedures, coupled with the prisoner's right to review his pre-sentence report prior to sentencing, Rule 32(c)(3), Fed. R.Cr.P., should be sufficient to insure the reliability of the Commission's determination as to original jurisdiction and parole eligibility.[5]

---

4. The prisoner's right to review the documents relied upon by the Commission is not unlimited. He is not free to review the following:

"(1) diagnostic opinions which, if made known to the eligible prisoner, could lead to a serious disruption of his institutional program;

"(2) any document which reveals sources of information obtained upon a promise of confidentiality; or

"(3) any other information which, if disclosed, might result in harm, physical or otherwise, to any person."

18 U.S.C. § 4208(c). However, § 4208 goes on to provide that:

". . . If any document is deemed by either the Commission, the Bureau of Prisons, or any other agency to fall within the exclusionary provisions of subparagraphs (1), (2), or (3) of this subsection, then it shall become the duty of the Commission, the Bureau, or such other agency, as the case may be, to summarize the basic contents of the material withheld, bearing in mind the need for confidentiality or the impact on the inmate, or both, and furnish such summary to the inmate."

5. It should be noted that the Fifth Circuit Court of Appeals has held that denial of parole itself is not a grievous loss and that the prisoner therefore is not entitled to procedural due process at the time of parole review, *Brown v. Lundgren*, 528 F.2d 1050 (5th Cir. 1976), *Shaw v. Briscoe*, 541 F.2d 489 (5th Cir. 1976). That conclusion is not strictly relevant to this discussion, however, since the Court of Appeals has also held that the Commission must comply with the requirements of the Administrative Procedure Act, *Brown*, 528 F.2d at 1053–55. Thus, if the Commission actually relied on

Of course, the petitioner received his parole hearing in August 1975, prior to the enactment of the above section. Since neither party has addressed the procedures followed in *his* parole hearing, the court is disinclined to conclude at this stage that the Bureau's designation of him as a special offender did not unduly influence the parole decision. Supplemental briefs and affidavits describing the procedures used here are therefore in order.

### B. *The Adequacy of the Parole Commission's Reasons for Denial*

■ Petitioner raises the related claim that the Parole Commission failed to provide him with adequate reasons for designating him original jurisdiction and for denying him parole. Contrary to petitioner's assertion, however, the record clearly demonstrates that petitioner was *not* designated for original jurisdiction; his case was referenced to the National Commissioners for consideration of the examiners' decision pursuant to 28 C.F.R. § 2.24, *see* n. 2, *supra*. Under that section, a case is referred to the National Commissioners and a decision is made by two votes, with the Regional Commissioner voting together with two of the four National Commissioners. This procedure is applied in all cases where the Regional Commissioner simply feels that the recommendation of the hearing examiners should be reviewed by the National Commissioners, *see* 12 C.F.R. § 2.23. It differs from the original jurisdiction procedure in that (1) only two votes, not three, are required for a decision, *compare* 12 C.F.R. § 2.17, *see* n. 1, *supra*, and (2) it does not carry the stigma attached to original jurisdiction cases alluded to by Judge Hill in *Rothman, supra*, 403 F.Supp. at 193. While it is true that the Commission denied the petitioner parole for reasons often associated with original jurisdiction cases, original jurisdiction was not invoked. Thus, the Commission was only required to give the

petitioner adequate reasons for the denial of parole.

■ The Commission apparently concluded that the petitioner's participation in a narcotics ring was evidence of large-scale, or organized, criminal activity, and the Commission informed him that such involvement required service of at least another year:

> "Your offense behavior has been rated as very high severity. You have a salient factor score of 10 (see attached sheet). You have been in custody a total of 34 months. Guidelines established by the Board for adult cases which consider the above factors indicate a range of 26–36 months to be served before release for cases with good institutional program performance and adjustment. After careful consideration of all relevant factors and information presented, it is found that a decision outside the guidelines at this consideration appears warranted because the offense you were involved in was part of a large scale or organized criminal enterprise which had evidence of sophistication in its planning and commission. You need additional institutional treatment, specifically in the educational and counseling areas to enhance your capacity to lead a law-abiding life."

The petitioner does not challenge the Commission's characterization of the nature of his criminal activity but merely argues that the Commission improperly exceeded its own guidelines and gave "rubber-stamp" reasons for doing so. Both contentions are without merit. The decision to go beyond the guidelines in individual cases meriting such adjustment is well within the discretion of the Commission, *Brown v. Lundgren*, 528 F.2d 1050, 1055 (5th Cir. 1976), and the Commission adequately explained that decision to the petitioner and this reviewing court, *Stassi v. Hogan, supra*, 395 F.Supp. at 145.

---

the Bureau's designation without examining the underlying facts, its decision could be subject to attack as being "arbitrary and capricious," 5 U.S.C. § 706(2)(A).

## C. The Central Monitoring Case Designation

Although the petitioner explicitly challenges only the denial of his parole in 1975, his petition also implicitly challenges his continued designation as a central monitoring case. As noted in Section A, this new classification, like special offender, is primarily an administrative device whereby the Bureau insures that certain prisoners are not transferred to other prisons or allowed to participate in community programs without prior approval from the Bureau's central office, Policy Statement 7900.53(4). Judge Zampano found in *Catalano* that the effect of the special offender classification is generally to delay or preclude social furloughs, release to half-way houses, and transfers to other institutions, 383 F.Supp. at 350. The court in *Holmes* also noted that the Bureau of Prisons ordinarily will not grant furloughs to those involved in organized criminal activities, 541 F.2d at 1250, Policy Statement No. 7300.12c (June 23, 1974), and the same applies to release to work/study institutions, Policy Statement No. 7500.20B (June 19, 1974). This alteration in the prisoner's possibility for obtaining release or transfer under these various programs has been held to be a loss grievous enough to require procedural due process (*see* cases cited in Section A).

It could be argued that this result is not affected by the Supreme Court's recent decision in *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), *reh. den.* 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976). In that case, the Court held that Massachusetts state prisoners were not entitled to procedural due process before being transferred to another prison because "... Massachusetts law conferred no right on the prisoner to remain in the prison to which he was initially assigned, defeasible only upon proof of specific acts of misconduct. Insofar as we are advised, transfers between Massachusetts prisons are not conditioned upon the occurrence of specified events. On the con-

trary, transfer in a wide variety of circumstances is vested in prison officials." 427 U.S. at 226–27, 96 S.Ct. at 2539. In the federal prison system, however, transfers and furloughs are "held out as rehabilitative programs by the Bureau of Prisons," and therefore constitute "cognizable benefit[s] to prisoners," *Holmes, supra* at 1252. Since no such cognizable benefits were bestowed upon the prisoners in *Meachum*, the *Holmes* court declined to read that case "to eliminate due process where cognizable benefits have been established by prison policy itself and eligibility for the benefits is precluded or significantly reduced by the occurrence of a specified event, that is, the special offender classification," *Id.* at 1252–53.

This court must decline to follow the *Holmes* decision, however, since the Supreme Court has since made it clear that *Meachum* applies to federal prisoners as well. In *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the Court held that federal prisoners charged with violating the conditions of their parole on a prior sentence need not receive a final revocation hearing until the end of their intervening sentence. In so finding, the Court specifically rejected the prisoner's contention that the parole violator detainer unconstitutionally prevented him from participating in prison rehabilitation programs:

"Petitioner also argues that the pending warrant and detainer adversely affect his prison classification and qualification for institutional programs. We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right. In *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451, for example, no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal

system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process." 429 U.S. at 88, n. 9, 97 S.Ct. at 279, n. 9. Thus, this court must conclude that petitioner is not entitled to procedural due process before he is classified as a central monitoring case.

In any event, the Bureau of Prisons has now instituted a procedure whereby a prisoner can administratively challenge the Bureau's designation. In each case where the institution seeks to classify a prisoner as a central monitoring case, the prisoner must now be advised in writing of the proposed designation and given the reasons therefor. He must be given a reasonable opportunity to respond orally or in writing to the Chief Executive Officer, and the institution must forward to the Central Office its recommendation, together with its reasons, an explanation of the prisoner's objections, and copies of all written material submitted by the prisoner. The Central Office must then notify the prisoner of the decision and advise the prisoner that he has a right to appeal directly to the general counsel of the Central Office. If the designation is made originally at the Central Office level before the prisoner is assigned to an institution, the prisoner must receive notice in ten days and then presumably may appeal that decision directly to the Central Office, Policy Statement 7900.53(4). The statement further notes that "[j]ustification for the designation must also be readily apparent in the offender's central file at the institution."

The procedures adopted by the Bureau would, for the most part, provide the prisoner with sufficient means to contest the designation prior to final action. If necessary, he could procure affidavits to support any factual contentions and forward them, together with his objections, to the Central Office. The only amendments to the current procedure that this court would recommend are (1) a provision allowing prisoners to have their objections written and filed by representatives, including counsel, and (2) an extension of the pre-designation procedures to those cases where the original decision is made by the Central Office. Under the current regulations, a prisoner is given notice only after the designation is made by the Central Office. In such a situation, there is a real danger that the subsequent appeal by the prisoner would be treated in a pro forma manner. If, on the other hand, the prisoner is allowed input before the decision is made, the Central Office would probably be more likely to seriously consider his objections.

In summary, the court finds that

(A) Parole decisions made pursuant to the procedure set out in 18 U.S.C. § 4208 are not influenced in any significant way by the Bureau of Prisons' special offender or central monitoring case designations;

(B) The petitioner here was given adequate reasons for the denial of parole; and

(C) The petitioner is not entitled to procedural due process before being designated a central monitoring case.

To the extent that this court's decision in *Stassi v. Hogan, supra,* is inconsistent with these conclusions, that case is hereby overruled.

The parties are ALLOWED ten (10) days to file the supplemental pleadings referred to in the body of this order.

So ORDERED, this 29th day of March, 1977.